319 F.3d 93
 Hopeton Anthony RANKINE, Paul R. Lawrence, Petitioners-Appellants,
v.
Janet RENO, Attorney General of the United States, District Director, Immigration and Naturalization Service, Respondents-Appellees. and
Louis Eloka Eze, Petitioner-Appellant,
v.
James J. Ingham, District Director of Immigration and Naturalization Services, Respondent-Appellee.
 Docket No. 01-2135(L).
 Docket No. 01-2483(CON).
 Docket No. 00-2631.
 United States Court of Appeals, Second Circuit.
 Argued October 9, 2000.
 Decided January 28, 2003.
 
 (Hopeton Anthony Rankine), pro se Petitioner-Appellant.
 Jesse M. Siegel, New York, N.Y. (Law Office of Jesse M. Siegel, of counsel), for Petitioner-Appellant Lawrence.
 Kathy Marks, Assistant U.S. Attorney for the Southern District of New York, New York, N.Y. (James B. Comey, United States Attorney, Krishna R. Patel and Jeffrey S. Oestericher, Assistant U.S. Attorneys, of counsel), for Respondents-Appellees.
 Katherine Goldstein, New York, N.Y. (Jonathan E. Gradess, Executive Director, Manual D. Vargas, Project Director, New York State Defenders Association; Laura Johnson, Director, Special Litigation Unit, The Legal Aid Society of the City of New York; Paul A. Engelmayer, Christopher J. Meade, Katherine R. Goldstein, Wilmer, Cutler & Pickering; Joshua L. Dratel, Joshua L. Dratel, P.C., New York State Association of Criminal Defense Lawyers), Amici Curiae in support of Petitioners-Appellants.
 Donna Werner, New York, N.Y. (Frederick T. Davis, Shearman & Sterling, of counsel), for Petitioner-Appellant Eze.
 John S. Hogan, Trial Attorney, Office of Immigration Litigation, U.S. Department of Justice, Washington, DC (Robert D. McCallum, Jr., Assistant Attorney General, Civil Division, Linda S. Wendtland, Assistant Director, of counsel), for Respondent-Appellee.
 Before OAKES and CABRANES, Circuit Judges, and PRESKA,* District Judge.
 OAKES, Senior Circuit Judge.
 These cases, which we address in tandem, raise the issue whether Congress's repeal of discretionary waivers of deportation has an impermissible retroactive effect when applied to aliens who were convicted at trial before the date of the repeal. In St. Cyr v. INS, 229 F.3d 406 (2d Cir. 2000), which the Supreme Court upheld in INS v. St. Cyr, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), we found that an impermissible retroactive effect did exist with respect to aliens who had entered into plea agreements prior to the repeal of discretionary relief because the aliens relied on such relief in their decisions to plead guilty. The petitioners here urge us to extend the reasoning of St. Cyr beyond plea agreements to cases such as theirs, in which they chose to proceed to trial and were convicted. Because we find that petitioners did not detrimentally rely on the availability of discretionary relief when exercising their right to trial, we affirm the decisions of the United States District Court for the Southern District of New York, Andrew J. Peck, Mag. Judge, and the United States District Court for Western District of New York, William M. Skretny, Judge.
 
 
 BACKGROUND
 
 
 1
 As we are resolving the appeals of several petitioners, we address the facts of each of their cases in turn. Initially, we review the statutory history of the discretionary relief provisions applicable to resident aliens.
 
 I. Statutory History
 
 2
 The statutory history of discretionary relief from deportation is complex, and is set forth fully in our opinion in St. Cyr. 229 F.3d at 410-12. To summarize briefly here, the deportation of resident aliens who commit aggravated felonies is controlled by the Immigration and Nationality Act ("INA"). See 8 U.S.C. § 1227(a)(2)(A)(iii) (2001). Prior to 1997, aliens deportable under the INA could apply to the Attorney General for a discretionary waiver of deportation pursuant to § 212(c) of the INA. To qualify for such relief, an alien was required to show that he (1) was a lawful permanent resident of the United States, (2) had an unrelinquished domicile of seven consecutive years, and (3) had not committed an aggravated felony for which he had served a term of at least five years. See 8 U.S.C. § 1182(c) (1994). If the alien met these requirements, the Attorney General had the discretion to waive deportation. See id.; St. Cyr, 229 F.3d at 410.
 
 
 3
 In 1996, Congress enacted first the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), which limited eligibility for relief under § 212(c), see AEDPA, Pub.L. No. 104-132, § 440(d), 110 Stat. 1214, 1277 (1996), and then the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") which repealed INA § 212(c) completely, effective April 1, 1997. See IIRIRA, Pub.L. No. 104-208, § 304(b), 110 Stat. 3009-546, -597 (1996). Section 212(c) relief was, in effect, replaced by a new form of relief called "cancellation of removal," 8 U.S.C. § 1229b, which allows the Attorney General to cancel removal proceedings for a class of resident aliens that does not include those convicted of an aggravated felony. In removal proceedings commenced after April 1, 1997, therefore, resident aliens convicted of an aggravated felony are no longer eligible for any form of discretionary relief from deportation.
 
 II. Hopeton Rankine
 
 4
 Rankine, a citizen of Jamaica, entered the United States as a permanent resident alien in June 1983. In 1994, he was convicted after a jury trial in state court of attempted second degree murder and was sentenced to eight to sixteen years for that charge, as well as to indeterminate concurrent sentences on four other charges including assault and criminal possession of a weapon.
 
 
 5
 In May 1998, the INS formally commenced removal proceedings against Rankine, charging that he was deportable under 8 U.S.C. § 1227(a)(2)(A)(iii) (1998) as an alien convicted of an aggravated felony and under § 1227(a)(2)(C) as an alien convicted of a firearms offense. At his deportation hearing in December 1998, Rankine, through counsel, conceded these two charges of removability and the factual allegations supporting them. The Immigration Judge ("IJ") found that Rankine, as an aggravated felon, was deportable and ineligible for any form of relief from removal. The IJ therefore ordered Rankine removed to Jamaica.
 
 
 6
 On appeal to the Board of Immigration Appeals ("BIA"), Rankine argued that he should have been found eligible for § 212(c) relief because such relief was available to him when he committed his crimes. In May 1999, the BIA affirmed the IJ's decision.
 
 
 7
 Petitioning the district court for a writ of habeas corpus, Rankine asserted that he remained eligible for relief because he was convicted of his crimes prior to the enactment of IIRIRA. On January 23, 2001, the district court denied the petition, holding that because Rankine had not shown he was convicted pursuant to a guilty plea, he was not eligible for § 212(c) relief under our decision in St. Cyr. The district court subsequently granted Rankine a certificate of appealability on the ground that St. Cyr had been granted certiorari by the Supreme Court.
 
 III. Paul Lawrence
 
 8
 Lawrence, also a citizen of Jamaica, entered the United States as a permanent resident alien in May 1971. In 1986, Lawrence pled guilty to attempted criminal possession of a controlled substance, a crime for which he was sentenced to five years' probation. In 1995, Lawrence was convicted in state court after a jury trial of criminal sale and criminal possession of cocaine in the third degree, and was sentenced to concurrent terms of four and a half to nine years.
 
 
 9
 In March 1999, the INS initiated removal proceedings against Lawrence by filing a Notice to Appear, which charged that he was removable under 8 U.S.C. §§ 1227(a)(2)(A)(iii) and (B)(i) as an alien convicted of an aggravated felony and a controlled substance violation. At his deportation hearing in August 1999, Lawrence conceded that he was deportable as charged, but contended that § 212(c) relief was available to him. The IJ found that Lawrence was ineligible for § 212(c) relief as well as for any other form of relief from removal, and consequently ordered his removal to Jamaica. The IJ's ruling was upheld by the BIA on appeal.
 
 
 10
 Lawrence petitioned the federal district court for a writ of habeas corpus, claiming that he was eligible for § 212(c) relief because his criminal conviction occurred prior to the enactment of IIRIRA. The district court denied the petition on July 20, 2001, holding that it was bound by this court's decision in St. Cyr to conclude that Lawrence was ineligible for such relief because he had not been convicted pursuant to a guilty plea. The district court issued a certificate of appealability, however, because it recognized that our statements in St. Cyr about the application of IIRIRA to pre-IIRIRA convictions obtained after trial could be construed as dicta.
 
 IV. Louis Eze
 
 11
 Eze is a citizen of Nigeria who entered the United States as a visitor in 1983 and adjusted his status to permanent resident alien in 1985. In 1993, Eze was convicted following a jury trial of rape in the first degree, sodomy, incest, and sexual abuse of a minor, and was sentenced to eight and one-third to twenty-five years in prison.[1]
 
 
 12
 In February 1998, the INS filed a Notice to Appear against Eze, charging that he was removable as an aggravated felon under 8 U.S.C. § 1227(a)(2)(A)(iii). At his removal hearing in September 1998, the IJ found that Eze was deportable as charged and was not eligible for any form of relief from removal because he was placed into removal hearings after the effective date of IIRIRA. In April 1999, the BIA denied Eze's appeal.
 
 
 13
 Petitioning the district court for a writ of habeas corpus, Eze raised seven arguments, including the contention that the IJ wrongly found him ineligible for a waiver of deportation pursuant to § 212(c). Eze argued that his proceedings were pending prior to AEDPA's and IIRIRA's enactment, and that therefore, his case should have been decided under the statutory scheme in effect at that time. The district court dismissed his petition on September 27, 2000, holding, inter alia, that AEDPA precluded Eze, an aggravated felon, from seeking a discretionary waiver of deportation. The district court subsequently denied a certificate of appealability.
 
 
 14
 On April 4, 2001, this court granted a certificate of appealability and appointed counsel to represent Eze on the following questions: (1) whether Eze would have qualified for a waiver of deportability under 8 U.S.C. § 1182(c) (1994) by virtue of having established lawful unrelinquished domicile of seven consecutive years and having served less than five years on his state court conviction; and (2) if so, whether AEDPA § 440(d) and IIRIRA § 304(a) were impermissibly retroactive as applied to Eze because he was convicted after a jury trial prior to their enactment.
 
 
 15
 We heard the appeals of these three petitioners in tandem because their cases all hinge on whether § 212(c) relief should remain available to aggravated felons who were convicted after trial while § 212(c) was still in effect, but whose removal proceedings were commenced after § 212(c) was repealed. Because we answer this question in the affirmative, we do not address the first issue raised in Eze's certificate of appealability.
 
 
 DISCUSSION
 
 
 16
 Our jurisdiction here is established by our decision in Calcano-Martinez v. INS, 232 F.3d 328 (2d Cir.2000), aff'd 533 U.S. 348, 121 S.Ct. 2268, 150 L.Ed.2d 392 (2001), which holds that the federal courts retain jurisdiction under 28 U.S.C. § 2241 over legal questions raised by criminal aliens in habeas petitions seeking review of final removal orders. 232 F.3d at 343. Our standard of review is de novo on appeal from the denial of a habeas petition. Kuhali v. Reno, 266 F.3d 93, 99 (2d Cir.2001).
 
 
 17
 The common question presented in these appeals is a narrow one: does the fact that the petitioners were convicted after trial dictate a different conclusion on the retroactive effect of IIRIRA than that reached in St. Cyr, where the petitioners had pled guilty? For the reasons set forth below, we conclude it does.
 
 
 18
 The touchstone case when considering retroactivity is Landgraf v. USI Film Prod., 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). There, the Supreme Court set forth a two-step test to determine whether a law should apply to conduct occurring prior to the law's enactment: a court is to (1) establish whether Congress "expressly prescribed the statute's proper reach," and, if it did not, (2) "determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." Id. at 280, 114 S.Ct. 1483. As we concluded in St. Cyr, and as the Supreme Court agreed, "Congress did not definitively decide the issue of [IIRIRA] § 304's retroactive application to pre-enactment convictions." 229 F.3d at 415; 533 U.S. at 320, 121 S.Ct. 2271.[2] It is therefore necessary to proceed to the second step of Landgraf's retroactivity analysis.
 
 
 19
 Landgraf recognized that "[a] statute does not operate `retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based in prior law." 511 U.S. at 269, 114 S.Ct. 1483 (internal citation omitted). Rather, "[t]he inquiry ... demands a commonsense, functional judgment about `whether the new provision attaches new legal consequences to events completed before its enactment.'" Martin v. Hadix, 527 U.S. 343, 357-58, 119 S.Ct. 1998, 144 L.Ed.2d 347 (1999) (quoting Landgraf, 511 U.S. at 270, 114 S.Ct. 1483). In St. Cyr, the Supreme Court reiterated that "the judgment whether a particular statute acts retroactively `should be informed and guided by familiar considerations of fair notice, reasonable reliance, and settled expectations.'" 533 U.S. at 321, 121 S.Ct. 2271 (quoting Martin, 527 U.S. at 358, 119 S.Ct. 1998) (internal quotations omitted).
 
 
 20
 In St. Cyr, we held that applying the repeal of § 212(c) to aliens who had entered plea agreements with the expectation of receiving relief "would upset settled expectations and change the legal effect of prior conduct." 229 F.3d at 418. We recognized that the conduct at issue was the alien's decision to enter a guilty plea, as "`it is the conviction, not the underlying criminal act, that triggers the disqualification from § 212(c) relief.'" Id. (quoting Mattis v. Reno, 212 F.3d 31, 37 (1st Cir. 2000)). We then found that:
 
 
 21
 Given the dramatic impact removal would have on a legal resident's life, it is likely that a legal resident would, because of the possibility of receiving a lighter sentence, only decide to concede guilt to a crime that renders him or her removable in order to be eligible to apply for relief from removal. Under the law today, this settled expectation is upset dramatically.
 
 
 22
 Id. at 419. We concluded that AEDPA § 440(d) and IIRIRA § 304 "attach new substantive legal consequences to a guilty or nolo contendere plea to a deportable crime and would have an impermissible retroactive effect if applied to pre-enactmentpleas." Id. at 420.
 
 
 23
 The Supreme Court, in its affirmance, agreed that the elimination of § 212(c) relief for aliens who entered plea agreements "with the expectation that they would be eligible for such relief clearly `attaches a new disability, in respect to transactions or considerations already past.'" St. Cyr, 533 U.S. at 321, 121 S.Ct. 2271 (quoting Landgraf, 511 U.S. at 269, 114 S.Ct. 1483) (internal quotation omitted). The Court focused on the fact that plea agreements are a form of quid pro quo where, "[i]n exchange for some perceived benefit, defendants waive several of their constitutional rights (including the right to a trial) and grant the government numerous tangible benefits." Id. at 322, 121 S.Ct. 2271 (internal quotation omitted). Recognizing that § 212(c) relief was frequently granted prior to the enactment of AEDPA and IIRIRA, the Court found that "preserving the possibility of such relief would have been one of the principal benefits sought by defendants deciding whether to accept a plea offer or instead to proceed to trial." Id. at 323, 114 S.Ct. 1483.
 
 
 24
 The Court also highlighted the "clear difference, for the purposes of retroactivity analysis, between facing possible deportation and facing certain deportation." Id. at 325, 121 S.Ct. 2271. Because there was a "significant likelihood" that resident aliens would receive § 212(c) relief prior to IIRIRA, the Court found that aliens "almost certainly relied upon that likelihood in deciding whether to forgo their right to trial," id., and instead to plead to sentences that would preserve their eligibility for such relief. Without the possibility of relief, these pleas guaranteed the aliens' removal; the elimination of § 212(c), therefore, changed the legal effect of their pleas and unsettled their reliance. The Court concluded that "it would surely be contrary to `familiar considerations of fair notice, reasonable reliance, and settled expectations' to hold that IIRIRA's subsequent restrictions deprive them of any possibility of such relief." Id. at 323-24, 121 S.Ct. 2271 (quoting Landgraf, 511 U.S. at 270, 114 S.Ct. 1483) (internal citation omitted).
 
 
 25
 As petitioners correctly point out, the decisions in St. Cyr do not directly control the outcome of their cases. We cannot, however, ignore the strong signals sent in those opinions that aliens who chose to go to trial are in a different position with respect to IIRIRA than aliens like St. Cyr who chose to plead guilty. Indeed, the choice to go to trial puts these petitioners on different footing in two crucial respects.
 
 
 26
 First, none of these petitioners detrimentally changed his position in reliance on continued eligibility for § 212(c) relief. Unlike aliens who entered pleas, the petitioners made no decision to abandon any rights and admit guilt — thereby immediately rendering themselves deportable — in reliance on the availability of the relief offered prior to IIRIRA. The petitioners decided instead to go to trial, a decision that, standing alone, had no impact on their immigration status. Unless and until they were convicted of their underlying crimes, the petitioners could not be deported. The claim that they relied on the availability of § 212(c) relief in making the decision to go to trial is therefore somewhat hollow: in fact, they decided to go to trial to challenge the underlying crime that could render them deportable and, had they succeeded, § 212(c) relief would be irrelevant.
 
 
 27
 Second, the petitioners have pointed to no conduct on their part that reflects an intention to preserve their eligibility for relief under § 212(c) by going to trial. If they had pled guilty, petitioners would have participated in the quid pro quo relationship, in which a greater expectation of relief is provided in exchange for forgoing a trial, that gave rise to the reliance interest emphasized by the Supreme Court in St. Cyr. As the Court made clear, it was that reliance, and the consequent change of immigration status, that produced the impermissible retroactive effect of IIRIRA. St. Cyr, 533 U.S. at 325, 121 S.Ct. 2271. Here, petitioners neither did anything nor surrendered any rights that would give rise to a comparable reliance interest. Rather than ensuring their continued eligibility for discretionary relief through a plea agreement, the petitioners instead risked forfeiting their eligibility completely at trial through the possibility of a sentence in excess of that allowable under § 212(c). Under these circumstances, it is difficult to conclude, as we must to find impermissible retroactivity, that the petitioners chose to go to trial in reliance on the availability of § 212(c) relief.
 
 
 28
 As we stated in St. Cyr, it is choosing "to forgo fighting the conviction of a qualifying crime and enter a plea" that leads to an expectation of relief from removal. 229 F.3d at 419. The petitioners here assumed no similarly heightened expectation from their decision to go to trial. Because those aliens who went to trial prior to the elimination of § 212(c) relief cannot show that they altered their conduct in reliance on the availability of such relief, we hold that IIRIRA's repeal of § 212(c) is not impermissibly retroactive as applied to them.[3]
 
 
 29
 Our holding follows this court's decision in Theodoropoulos v. INS, 313 F.3d 732, 739 (2d Cir.2002), in which we held that "we find it appropriate to join our sister circuits in confining St. Cyr to the plea situation from which it arose." Examining the case of a defendant who argued that an exception should be made to the administrative exhaustion requirement because he was convicted at trial prior to the repeal of § 212(c) relief, the court found that "a petitioner convicted after a trial rather than on a guilty plea has not faced a substantial change in expectations" id., because "[a] jury's verdict, not the potential of discretionary waiver or the IIRIRA's removal thereof, determined the legal consequence of the decision to seek trial." Id. at 740. The court recognized that the crucial inquiry was whether a defendant "surrender[ed] his rights in the type of reasoned exchange the Supreme Court found crucial to its St. Cyr. holding." Id. at 739. The reasoning of Theodoropoulos has direct application to the instant case.
 
 
 30
 Additionally, this court recently found that an alien who committed his crime prior to § 212(c)'s repeal, but was convicted after such relief became unavailable, could not claim an impermissible retroactive effect as to him because he had "no basis for claiming similar reliance" to the alien in St. Cyr. Mohammed v. Reno, 309 F.3d 95, 103 (2d Cir.2002). We stated there that "the Supreme Court's focus on the shift from possible to certain deportation was explicitly tied to the alien's reliance on the prior availability of discretionary relief in deciding whether to plead guilty." Id.
 
 
 31
 Decisions from other circuits are in accordance with our holding. In Chambers v. Reno, 307 F.3d 284 (4th Cir.2002), the Fourth Circuit held in a case legally indistinguishable from those of petitioners here that IIRIRA's repeal of § 212(c) relief was not impermissibly retroactive when applied to an alien convicted after trial of an aggravated felony. Using the reasoning of the Supreme Court in St. Cyr, the court found that Chambers did not possess "a reliance interest comparable to that which was at the heart of St. Cyr," id. at 290, because "by rolling the dice and going to trial, Chambers actually ensured that his eligibility for discretionary relief would remain uncertain." Id. at 291. The court also found that "in contrast to aliens who plead guilty, Chambers made no decision that adversely impacted his immigration status." Id. Additionally, the court considered whether the lack of detrimental reliance foreclosed a finding of retroactivity under Hughes Aircraft Co. v. United States ex rel. Schumer, 520 U.S. 939, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997).[4] Identifying the relevant past conduct as Chambers's decision to go to trial, the court concluded that this conduct did not "render him deportable or subject him to certain deportation, regardless of whether pre- or post-IIRIRA law is applied." Id. at 293.
 
 
 32
 Similarly, the First Circuit recently held that § 212(c) relief was not available to an alien defendant who went to trial rather than enter a plea before the relief was repealed. Dias v. INS, 311 F.3d 456, 458 (1st Cir.2002) (per curiam). The court stated that, in contrast to those who pled guilty, "alien criminal defendants who chose to go trial, prior to the change wrought by AEDPA, were not relying on immigration law as it existed at the time in making that decision." Id. Noting that an earlier case from the circuit held "that the retroactivity analysis must include an examination of reliance in a guilty plea situation," id., the court joined the Ninth and Seventh Circuits "in ruling that application of the new statutory limitations on discretionary relief does not have an impermissible retroactive effect on those aliens who would have been eligible for discretionary relief when they were convicted of a felony after trial." Id.
 
 
 33
 In Armendariz-Montoya v. Sonchik, 291 F.3d 1116 (9th Cir.2002), the Ninth Circuit found that application of AEDPA's repeal of § 212(c) relief "to those aliens who were convicted after a jury trial does not result in a retroactive effect." Id. at 1121. The court noted, as we did in St. Cyr, that:
 
 
 34
 It would border on the absurd to argue that these aliens might have decided not to commit ... crimes, or might have resisted conviction more vigorously, had they known that if they were not only imprisoned but also, when their prison term ended, ordered deported, they could not ask for a discretionary waiver of deportation.
 
 
 35
 Id. (quoting LaGuerre v. Reno, 164 F.3d 1035, 1041 (7th Cir.1998)); see also St. Cyr, 229 F.3d at 418 (same). The court concluded that "[u]nlike aliens who pleaded guilty, aliens who elected a jury trial cannot plausibly claim that they would have acted any differently if they had known about [AEDPA]." 291 F.3d at 1121.
 
 
 36
 The Seventh Circuit also has found that an alien's lack of reliance on § 212(c) relief in going to trial precludes a finding of retroactivity. Lara-Ruiz v. INS, 241 F.3d 934, 945 (7th Cir.2001). As the court stated there:
 
 
 37
 He d[id] not argue that his expectation of the availability of the waiver in any way influenced his litigation strategy either in his state criminal proceedings or in his removal proceedings. Indeed, he d[id] not argue that he performed any act or gave anything up in reliance on the potential availability of a § 212(c) waiver.... Thus Lara-Ruiz cannot seriously maintain that the application of any rule barring discretionary relief from removal or deportation would upset his settled expectations sufficiently to trigger the presumption against retroactivity.
 
 
 38
 Id. Although this case was decided before the Supreme Court's decision in St. Cyr, the Seventh Circuit's focus on lack of reliance makes its reasoning apposite to this case.
 
 
 39
 As is clear from the above discussion, the issue of reliance has played a central role in the Supreme Court's and the circuit courts' reasoning with respect to the retroactivity of IIRIRA and AEDPA. The amici[5] here argue that aliens who went to trial relied on their right to seek § 212(c) relief in a manner similar to those who pled guilty and that their decisions to stand trial were made in accordance with their belief that they were preserving their eligibility for relief. Amici claim that, as criminal defense lawyers, they would have counseled aliens like Rankine and Lawrence to seek pleas that preserved the possibility of § 212(c) waiver if they had known the true immigration consequences — post IIRIRA and AEDPA — of the decision to go to trial.
 
 
 40
 What amici overlook in their arguments is that while aliens who chose to go to trial may have considered the availability of § 212(c) relief, what they truly relied upon was their claim of innocence. Unlike aliens who pled guilty so as to ensure their eligibility for relief, the petitioners here and others like them aimed to eliminate the possibility of deportation altogether by being found not guilty of the crimes of which they were accused. Their reliance, therefore, was on, as amici put it, "familiar criminal justice considerations" and the application of the criminal laws rather than on the availability of § 212(c) relief. Whatever counsel amici may have provided had they known of the future repeal of § 212(c) — and of course such counsel is purely speculative — it cannot fairly be concluded that petitioners here relied on § 212(c) in the same way that aliens who chose to plead guilty did.
 
 
 41
 Because we have not found a persuasive argument that the holding in St. Cyr can be extended to cover those aliens who were convicted at trial rather than pursuant to a plea, we conclude that the repeal of § 212(c) relief does not have an impermissibly retroactive effect when applied to petitioners. We agree with our sister circuits that the lack of detrimental reliance on § 212(c) by those aliens who chose to go to trial puts them on different footing than aliens like St. Cyr.
 
 
 42
 Additionally, we have considered Eze's due process and equal protection arguments and find them to be without merit. Accordingly, we affirm the denial of writs of habeas corpus to all three petitioners.
 
 
 CONCLUSION
 
 
 43
 For the forgoing reasons, we affirm the orders of the district courts below denying petitioners' writs of habeas corpus.
 
 
 
 Notes:
 
 
 *
 Honorable Loretta A. Preska, United States District Court Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 Eze has challenged his conviction on the ground of ineffective assistance of counsel in a separate habeas petition. His appeal of the district court's denial of his petition was heard by a panel of this court on December 10, 2002. We make no ruling here with respect to the merits of Eze's ineffective assistance claim
 
 
 [2]
 We reached the same conclusion with respect to AEDPA § 440(d)St. Cyr, 229 F.3d at 414.
 
 
 [3]
 In so holding, we note that we drew the same conclusion inSt. Cyr, see 229 F.3d at 421, but our words were dicta in that case. See Mapp v. Reno, 241 F.3d 221, 230 n. 13 (2d Cir.2001).
 
 
 [4]
 InHughes Aircraft, the Supreme Court emphasized that "the Court has used various formulations to describe the functional conception of legislative retroactivity" while adhering to a definition of a retroactive statute as one "`which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already passed.'" 520 U.S. at 947, 117 S.Ct. 1871 (quoting Landgraf, 511 U.S. at 269, 114 S.Ct. 1483).
 
 
 [5]
 Theamici in this case include the New York State Defenders Association, the Legal Aid Society of the City of New York, and the New York State Association of Criminal Defense Lawyers.