**DE CARDENAS**

v.

**RENO, et al.**

**No. 3:00 CV 913 SRU.**

United States District Court, D. Connecticut.

Aug. 8, 2003.

---

Andre Reed, Sr., Cheshire, CT, Pro se.

*RULING AND ORDER ON PETITION FOR WRIT OF HABEAS CORPUS*

UNDERHILL, District Judge.

Luz Elena Giraldo–Velez De Cardenas ("De Cardenas") brings this petition for a writ of habeas corpus challenging the Board of Immigration Appeals' May 12, 2000 decision denying her request for section 212(c) relief on the grounds that she was statutorily ineligible for such relief. De Cardenas asserts that she applied for deportation relief under section 212(c) of the Immigration and Nationality Act ("INA"), and was eligible for such relief at the time of her application. A hearing on her eligibility for such relief was temporarily postponed because De Cardenas was in the process of being transferred between two Bureau of Prisons ("BOP") facilities. Once the transfer between the facilities was completed, De Cardenas had served more than five years in prison, implicating her ability to receive section 212(c) relief. At a subsequent hearing, Immigration Judge Harriet B. Marple ruled that De Cardenas "should be granted section 212(c) relief," but did not order such relief upon concluding that the five-year bar applied retroactively to De Cardenas' application. Memorandum of Decision, July 11, 1997.

For the reasons stated below, De Cardenas' petition for a writ of habeas corpus is GRANTED. This case is remanded to the BIA for entry of an order granting section 212(c) relief.

FACTS AND PROCEDURAL POSTURE

De Cardenas is a native of Colombia and was admitted to the United States in 1975. In 1977, she became a permanent lawful resident of the United States. On March 2, 1990, De Cardenas pled guilty in federal district court to charges of conspiring to import cocaine, importation of cocaine, and conspiring with intent to distribute cocaine in violation of 21 U.S.C. §§ 963, 952(a), 960(a)(1) and 846.

On September 12, 1993, the INS initiated deportation proceedings against De Cardenas. On May 9, 1994, De Cardenas appeared via telephone at a master calendar hearing conducted by an immigration judge ("IJ"). At the hearing, De Cardenas conceded deportability and was informed by the IJ that she might qualify for relief under section 212(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(c) (hereinafter referred to as section 212(c)). The statute provides that section 212(c) relief is available "only within five years of the alien's conviction." De Cardenas's case was scheduled for another master calendar hearing on July 21, 1994, and she was instructed to submit an application for section 212(c) relief at that time.

At the July 21, 1994 master calendar hearing, De Cardenas submitted a section 212(c) application *pro se*, but her case was closed administratively in anticipation of De Cardenas' transfer to another facility within the Bureau of Prisons ("BOP") system. The presiding IJ advised De Cardenas that she would be given an evidentiary hearing on her section 212(c) application at a later date.

On October 26, 1994, De Cardenas was transferred to her present location at Danbury, Connecticut. By March 1995, five years had elapsed since the date of De Cardenas' conviction without decision of her section 212(c) application. De Cardenas did not participate in another INS proceeding until January 30, 1996. At that time, De Cardenas was given a hearing date of February 12, 1997 for a hearing on the merits of her section 212(c) application.

On April 24, 1996, Congress amended section 212(c) by enacting section 440(d) of the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214. Section 440(d) eliminated eligibility for section 212(c) relief for aliens convicted of enumerated "aggravated felonies." De Cardenas' crimes were among those enumerated by the AEDPA.

By the February 12, 1997 hearing on the merits of her section 212(c) claim, De Cardenas secured counsel. Counsel for De Cardenas filed a motion for the petition for section 212(c) relief to be heard *nunc pro tunc* as of July 21, 1994, the date of the hearing at which her application was administratively closed. In a decision issued on July 11, 1997, Immigration Judge Harriet B. Marple concluded that the circumstances of the section 212(c) application amounted to a failure of due process for which a hearing *nunc pro tunc* to a date within the original period of eligibility was an appropriate remedy. Judge Marple also noted that, since De Cardenas had submitted her request for a hearing *nunc pro tunc*, section 440(d) of the AEDPA amended section 212(c), barring section 212(c) relief for alien defendants who had been convicted of an aggravated felony. Judge Marple then concluded that, but for an interim decision by the Attorney General that section 440(d) applied to all pending section 212(c) applications, *see Matter of Soriano*, 21 I. & N. Dec. 516, 533 (Op.

Att'y Gen. Feb. 21, 1997), she would have granted De Cardenas' application for section 212(c) relief.

On July 11, 1997, De Cardenas appealed to the Board of Immigration Appeals ("BIA") the retroactive application of section 440(d) and Judge Marple's determination that a hearing *nunc pro tunc* would not remove De Cardenas from the scope of the AEDPA. In April 1998, the BIA, relying on *Soriano*, dismissed the appeal on the ground that the AEDPA did apply retroactively. The INS did not file a cross appeal, and the BIA did not address the issue of whether a hearing *nunc pro tunc* removed De Cardenas from the AEDPA's reach.

In May 1998, De Cardenas filed a petition for review in the United States Court of Appeals for the Second Circuit. At the time, the Second Circuit was considering the issue of retroactive application of the AEDPA, later decided in *Henderson v. INS*, 157 F.3d 106 (2d Cir.1998). Accordingly, De Cardenas and the Government entered into a stipulation in which De Cardenas' petition for review would be withdrawn from consideration, subject to reinstatement within 21 days after a decision was issued in *Henderson*, and the U.S. Attorney would not oppose De Cardenas' Motion for a Stay of Deportation, provided that any stay not be extended beyond the deadline for the reinstatement of the petition for review, and if timely reinstated, beyond that Court's disposition of the reinstated petition.

On September 18, 1998, the Second Circuit issued a unanimous decision in *Henderson*, holding, *inter alia*, that aliens seeking direct review of their deportation orders in the federal appellate court may file habeas petitions in the federal district courts, pursuant to 28 U.S.C. § 2241; and that AEDPA § 2241 "does not apply retroactively to aliens whose deportation ...

proceedings were pending on the date of its enactment." *Henderson*, 157 F.3d at 130. On October 4, 1999, the Court of Appeals ordered De Cardenas' petition for review reinstated, the final BIA order of deportation vacated, and the case remanded to the BIA for disposition in accordance with *Henderson*.

On May 12, 2000, the BIA issued a decision dismissing De Cardenas' appeal. The BIA held that Judge Marple had no authority to allow a section 212(c) hearing *nunc pro tunc* and that there was no undue delay in failing to complete De Cardenas' hearing prior to the time she had served five years in prison.

De Cardenas filed this petition for writ of habeas corpus on May 17, 2000.

## DISCUSSION

De Cardenas challenges the BIA's decision on the following grounds. First, she argues that the 1990 amendments to section 212(c) of the INA may not be applied retroactively to a petitioner who pleaded guilty to an aggravated felony prior to the enactment of the amendments. She also argues that section 440(d) of the AEDPA does not preclude section 212(c) relief from deportation in this case.

*Retroactive Effect of the 1990 Amendments to Section 212(c)*

Former section 212(c) of the INA, 8 U.S.C. § 1182(c) (1994), provided:

Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General ....

8 U.S.C. § 1182(c) (1994).

In 1990, Congress enacted the Immigration Act of 1990 ("IMMACT"), Pub.L. No.

101–649 (codified at 8 U.S.C. § 1182(c) (1994)), which amended former section 212(c), to provide that "an alien who has been convicted of an aggravated felony and has served a term of imprisonment of at least 5 years" shall not be eligible for a discretionary waiver of deportation under section 212(c). IMMACT § 511(a), 1990 U.S.C.C.A.N. (104 Stat.) at 5052 (amending former 8 U.S.C. § 1182(c)). Section 511(b) of the 1990 Amendments provided that "subsection (a) shall apply to admissions occurring after the date of the enactment of this Act." IMMACT § 511(b), 1990 U.S.C.C.A.N. (104 Stat.) at 5052 (amending former 8 U.S.C. § 1182(c)). The 1990 Amendments were enacted on November 29, 1990.

The government contends that section 511(a)'s five-year bar precludes De Cardenas from seeking a discretionary waiver of deportability under section 212(c) because she has been imprisoned for more than five years for an aggravated felony. De Cardenas contends that at the time she submitted her application for section 212(c) relief, she was statutorily eligible. The statute of limitations on De Cardenas' eligibility for section 212(c) relief lapsed during the period when her section 212(c) hearing was postponed to accommodate her transfer between BOP prisons. De Cardenas further argues that because she pled guilty to an aggravated felony prior to the enactment of the 1990 Amendments, under the Supreme Court's reasoning in *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), and *INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), section 511(a)'s five-year bar may not be applied retroactively to preclude section 212(c) discretionary relief to an alien who entered a guilty plea prior to the effective date of the 1990 Amendments.

In *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), the Supreme Court pronounced a two-pronged analysis for determining whether a federal statute could be retroactively applied. Under *Landgraf,* "[w]hen a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach." 511 U.S. at 280, 114 S.Ct. 1483. If Congress has expressly prescribed the statute's reach, the inquiry ends. *Id.* "When, however the statute contains no such express command, the court must determine whether the new statute would have retroactive effect." *Id.* That is, "whether it would impair rights a party possessed when he acted." *Id.* Where the statute would operate retroactively, the traditional presumption is that it does not govern absent clear congressional intent favoring such a result. *Id.*

*Landgraf's* retroactivity analysis was applied in *INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), where the Court determined that section 204(b) of the IIRIRA could not be applied retroactively to bar eligibility for a discretionary waiver of deportation under section 212(c) to those aliens who had pled guilty prior to the enactment of the Act. Acknowledging the Second Circuit's concerns that aliens, in reliance on the availability of section 212(c) relief from deportation, may enter guilty pleas to aggravated felonies, the Supreme Court noted that retroactive application of statutes raised special concerns. "Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." 533 U.S. at 316, 121 S.Ct. 2271. Although the Court acknowledged that Congress had the authority to enact statutes with a retroactive effect, it cau-

tioned that statutes "may not be applied retroactively ... absent a clear indication from Congress that it intended such a result." *Id.*

Here, the government contends that the plain language of the 1990 Amendments expressly provides that all aliens who have been imprisoned for five years or more for an aggravated felony are barred from receiving discretionary relief under section 212(c). Accordingly, the government argues, this court need not consider the impact of retroactive application, as would be required under the second prong of *Landgraf.* De Cardenas argues that the plain language of the 1990 Amendments does not compel a retroactive application, and further, that the Supreme Court's holding in *St. Cyr* precludes the retroactive application of a statute in situations where the settled expectations of the alien defendant would be disrupted.

Under *Landgraf*, we begin by asking "whether Congress has expressly prescribed the statute's reach." *Landgraf v. USI Film Products,* 511 U.S. 244, 280, 114 S.Ct. 1483 (1994). Section 511 provides:

1.  (a) In General—Section 212(c) (8 U.S.C. § 1182(c)) is amended by adding at the end of the following: "the first sentence of this subsection shall not apply to an alien who has been convicted of an aggravated felony and has served a term of imprisonment of at least 5 years."

    (b) Effective Date—The amendment made by subsection (a) shall apply to admissions occurring after the date of the enactment of this Act.

IMMACT § 511(a), (b), 1990 U.S.C.C.A.N. (104 Stat.) at 5052 (amending former 8 U.S.C. § 1182(c)).

The government, citing the Second Circuit's decision in *Buitrago–Cuesta v. INS,* 7 F.3d 291 (2d Cir.1993), contends that the plain language of section 511 demonstrates that the 1990 Amendments were intended to apply retroactively. In response to Buitrago's argument that absence of the word "on" in the language of section 511 indicated that Congress intended for the section to apply prospectively only, the Court of Appeals reasoned:

> Buitrago's argument ignores the fact that Congress limited the application of § 511 to aliens who have served at least five year terms of imprisonment. If § 511 does not apply to aliens convicted of aggravated felonies prior to 1990, its directive would not affect any action by the Attorney general until 1995, five years from the date of the 1990 Act's enactment, or, under Buitrago's alternative construction, until 1993, five years from the date of the 1988 passage of the definition of aggravated felony. However, by its terms, § 511 took effect "after the date of the enactment of the [1990] Act."

*Buitrago–Cuesta,* 7 F.3d at 294 (internal citations omitted).

The Court of Appeals' analysis relies heavily on the promulgation of an effective date in section 511(b) to support its conclusion that the Amendments were intended to apply retroactively. By stating an effective date, the Court of Appeals reasoned, Congress indicated that it intended for section 511 to go into effect immediately and apply retroactively, because the terms of the statute otherwise would not be effective for at least three years. *Id.* at 294 ("The only sensible interpretation is that Congress intended its directions to the Attorney General to go into effect promptly 'after the date of enactment.' ").

Although the Court's holding in *Buitrago–Cuesta* at first appears dispositive of this case, on closer examination it is unclear that the presence of an effective date in the statute is dispositive of retroactive

intent. When the Second Circuit decided *Buitrago–Cuesta* in 1993, the principles of retroactivity analysis were not clearly articulated. *Buitrago–Cuesta,* 7 F.3d at 293 ("The Supreme Court's position on the retroactivity of statutes is 'somewhat unclear.'") (citing *Morgan Guar. Trust Co. v. Republic of Palau,* 971 F.2d 917, 921 (2d Cir.1992)). Since 1993, the Supreme Court has clarified retroactivity principles in several cases. In *Landgraf* and *St. Cyr,* the Court specifically addressed the issue of whether the presence of an effective date affirmatively established Congress' intent towards retroactivity. In *St. Cyr,* the Court dismissed this argument, noting that:

> the mere promulgation of an effective date for a statute does not provide sufficient assurance that Congress specifically considered the potential unfairness that retroactive application would produce. For that reason, a "statement that a statute will become effective on a certain date does not even arguably suggest that it has any application to conduct that occurred at an earlier date."

*INS v. St. Cyr,* 533 U.S. 289, 317, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (quoting *Landgraf,* 511 U.S. at 257, 114 S.Ct. 1483).

Although the Court of Appeals determined in *Buitrago–Cuesta* that Congress' intention that section 511 apply retroactively was plain on the face of the statute, it did so without the benefit of the more nuanced analysis articulated by the Supreme Court in *St. Cyr* and *Landgraf.* Under the analysis set forth by the Supreme Court in *Landgraf,* it is not clear that Congress intended for section 511 to apply retroactively to bar the eligibility of aliens convicted by a guilty plea. Indeed, appellate courts throughout the country have been divided on the issue of section 511's meaning, suggesting that there is more than one viable interpretation of section 511's application. *See Samaniego–Meraz v. INS,* 53 F.3d 254, 256 (9th Cir. 1995) (holding that section 511 is silent about whether it applies retroactively); *accord De Osorio v. INS,* 10 F.3d 1034, 1041 (4th Cir.1993). *But see Campos v. INS,* 16 F.3d 118, 122 (6th Cir.1994) (holding that section 511's bar applied retroactively). *See also Toia v. Fasano,* 334 F.3d 917, 920 (9th Cir.2003) (observing that the disagreement on the interpretation of section 511 throughout the circuit courts suggests that the section "does not reflect the requisite clear congressional intent."). Although *Buitrago–Cuesta* controls in those cases where the alien defendant has been found guilty by jury trial, the Supreme Court's analysis in *St. Cyr* suggests a different result in cases where the alien defendant has pled guilty. Because the plain language of section 511 does not clearly direct a retroactive application in the instant case, where the alien defendant has pled guilty to an aggravated felony prior to the 1990 Amendments, it is appropriate to proceed to the second prong of the *Landgraf* analysis, which requires this court to consider the effect of applying section 511(a) retroactively.

Having concluded that no clear congressional intent exists as to whether section 511(a) applies to an alien who pled guilty to a removable crime prior to the statute's enactment on November 29, 1990, we must determine whether a bar to relief has any impermissibly retroactive effect. *See Landgraf,* 511 U.S. at 280, 114 S.Ct. 1483. "A statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment." *Id.* at 269, 114 S.Ct. 1483. Instead, the inquiry requires the court to determine "whether the new provision attaches new legal consequences to events completed before its enactment." *St. Cyr v. INS,* 229 F.3d 406, 417 (2d

Cir.2000). A statute that "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed" has an impermissible retroactive effect. *St. Cyr,* 229 F.3d at 417 (quoting *Landgraf,* 511 U.S. at 280, 114 S.Ct. 1483).

■ In situations, such as this one, where the alien defendant has entered a guilty plea in lieu of standing for a jury trial, the impact of a retroactive effect is even greater. As the Second Circuit observed in *St. Cyr I:*

> a legal resident who is charged with a crime that renders him removable from the United States carefully considers the immigration consequences of his or her conviction and, specifically, the availability of discretionary relief from removal .... Preserving the client's right to remain in the United States may be more important to the client than any potential jail sentence. Thus, the immigration consequences of a prosecution may totally alter the strategies chosen ... a[ny] attorney who suspects that this client is an alien has a duty to inquire and to protect his client's immigration status. Pleas and admissions must be approached with caution and with knowledge of the consequences .... Given the dramatic impact removal would have on a legal resident's life, it is likely that a legal resident would, because of the possibility of receiving a lighter sentence, only decide to concede guilt to a crime that renders him or her removable in order to be eligible to apply for relief from removal. Under the law today, this settled expectation is upset dramatically.

229 F.3d at 419. The Supreme Court affirmed this view in *St. Cyr II,* observing that "settled expectations should not be lightly disrupted. For that reason, the principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal." 533 U.S. at 316, 121 S.Ct. 2271.

■ In the instant case, De Cardenas plead guilty to an aggravated felony on March 2, 1990. The INS initiated deportation proceedings against her in September 1993. On May 9, 1994, during a telephonic master calendar hearing before an immigration judge, De Cardenas was informed that she might qualify for a discretionary waiver under section 212(c). De Cardenas submitted her *pro se* application for section 212(c) relief at the master calendar hearing held on July 21, 1994. At that time, De Cardenas had not served five years in prison, and thus, was eligible for section 212(c) relief. At that July 21, 1994 hearing, immigration judge Robert Vinikoor administratively closed De Cardenas' file in anticipation of her transfer to another BOP facility. Immigration Judge Vinikoor assured De Cardenas that a new hearing would be scheduled upon her transfer to the new facility. Tr. Hearing (July 21, 1994) at 9, ¶¶ 8–20. De Cardenas was transferred to the BOP facility at Danbury, Connecticut on October 26, 1994. At the time, she was still eligible for section 212(c) relief, even under the time limits of amended section 511. Her eligibility to receive relief under section 511(a) was compromised in March 1995, when five years had passed since her conviction. De Cardenas did not receive a hearing on her section 212(c) application until January 30, 1996, almost a year and a half after her transfer to the Danbury facility. Had her application been heard at the time of her transfer in October of 1994, De Cardenas would had have been statutorily eligible for section 212(c) relief. Through no fault of her own, her case was delayed, and apparently overlooked, dur-

ing the completion of her transfer. Under these circumstances, applying section 511(a) retroactively would not only disrupt the expectations that De Cardenas held at the time she decided to enter a guilty plea, it would penalize her for administrative decisions and oversights of the INS and the BOP. Such a result is irreconcilable with basic and fundamental principles of fairness and equity.

The government contends that under *Buitrago–Cuesta*, the circumstances of De Cardenas's eligibility are of no consequence, because the statute explicitly bars a discretionary waiver for those aliens who have been imprisoned for five years for an aggravated felony. The government also contends that under the Second Circuit's ruling in *Reid v. Holmes*, 323 F.3d 187 (2d Cir.2003), *Buitrago–Cuesta* remains good law and has not been limited by the Supreme Court's ruling in *INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). The government contends that, like *Buitrago–Cuesta*, *Reid* squarely decides the issue of retroactive application of section 511(a) in this case. However, De Cardenas' situation is distinguishable from that of *Buitrago–Cuesta* and *Reid*, where the petitioners had been convicted of aggravated felonies following jury trials. Here, De Cardenas *pled guilty* to an aggravated felony in reliance on the availability of section 212(c) relief in such circumstances.

Moreover, the principles articulated by both the Second Circuit and the Supreme Court in the *St. Cyr* decisions suggest that *Buitrago–Cuesta* must be read narrowly and limited to those cases where the alien defendant is convicted as a result of a trial. The *St. Cyr* cases, decided almost eight years after the Second Circuit's disposition of *Buitrago–Cuesta*, stand for the proposition that a conviction by guilty plea is fundamentally different from a conviction by jury trial. When deciding *Buitrago–Cuesta*, the Second Circuit was not privy to the analytical subtleties surrounding retroactivity analysis and guilty pleas that were articulated in the *St. Cyr* decisions. The analysis in the *St. Cyr* decisions draws a critical distinction between those guilty of aggravated felonies as a result of trial verdicts and as a result of guilty pleas. Although the *St. Cyr* decisions do not overrule *Buitrago–Cuesta*, they do suggest that *Buitrago–Cuesta* and *Reid* should be read narrowly in the context of petitioners who plead guilty to aggravated felonies. Indeed, the Second Circuit acknowledged this tension in *St. Cyr I*, questioning the applicability of *Buitrago–Cuesta* in situations where the petitioner had pled guilty under the assumption that she would be eligible for discretionary relief under section 212(c):

> [T]he petitioner in *Buitrago–Cuesta* did not plead guilty to a deportable crime but instead was convicted after a jury trial in state court. Therefore, our ruling today that the 1996 amendments insofar as they bar relief afforded prior to their enactment have a retroactive effect as applied to pre-enactment guilty pleas—a situation where an alien is likely to strategize according to the availability of discretionary relief—does not contradict our earlier ruling in *Buitrago–Cuesta*.

229 F.3d at 420. The Supreme Court also affirmed this principle, holding that "[e]lementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly." *INS v. St. Cyr*, 533 U.S. 289, 316, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). In a recent decision, *Rankine v. Reno*, 319 F.3d 93 (2d Cir. 2003), the Second Circuit echoed the Supreme Court's *St. Cyr* rationale and held that situations in which a section 212(c) applicant has pled guilty to the underlying

aggravated felony warrant a different conclusion than situations where the petitioner is convicted after trial. In *Rankine,* the Court of Appeals noted that the Supreme Court's opinion in *St. Cyr* focused on the *quid pro quo* nature of plea agreements and the fact that resident aliens were likely to plead guilty, rather than stand trial, because of settled expectations that section 212(c) relief would be available. Like the Court of Appeals in *Rankine,* we cannot "ignore the strong signals sent by those opinions that aliens who chose to go to trial are in a different position with respect to the IIRIRA than aliens like [De Cardenas] who chose to plead guilty." *Rankine,* 319 F.3d at 99. Accordingly, under the *St. Cyr* decisions, and the Second Circuit's decision in *Rankine,* it is clear that the holding of *Buitrago–Cuesta* must be read narrowly to allow retroactive application only in cases where the alien defendant's conviction is the result of a trial.

In light of the *St. Cyr* decisions and the Second Circuit's holding in *Rankine,* it is clear that retroactive application of section 511(a) would impermissibly impair the expectations of aliens convicted by guilty plea. In cases like De Cardenas', where the alien defendant pled guilty, the presumption is against retroactive application. Accordingly, De Cardenas' eligibility for section 212(c) relief is not barred by section 511(a).

Even if it were determined that section 511 applied retroactively, grounds still exist to afford De Cardenas relief. First, Administrative Judge Marple, in her memorandum of decision, noted that, but for the Attorney General's ruling in *Matter of Soriano,* she would have granted De Cardenas section 212(c) relief in an exercise of discretion. Second, the unusual and unnecessary delay in the timing of her administrative hearings—without her fault and while she was in the custody of the Department of Justice—compromised her section 212(c) application and deprived her of valuable rights. Finally, under *St. Cyr,* 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), the AEDPA does not bar a grant of relief in situations where, as here, the alien defendant's conviction was the result of a guilty plea.

■ Moreover, it is well established that the tenets of due process apply in alien deportation hearings. *Reno v. Flores,* 507 U.S. 292, 306, 113 S.Ct. 1439, 123 L.Ed.2d 1 ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."). Generally, procedural errors in deportation proceedings are cured by holding a new hearing in compliance with the requirements of due process. *Batanic v. INS,* 12 F.3d 662, 667 (7th Cir.1993). "However, when the procedural defect has also resulted in the loss of an opportunity for statutory relief, these remedies cannot cure the defect." *Id.* Here, De Cardenas attempted to complete the section 212(c) application process in a timely fashion. Through no fault of her own, administrative hearings on her application were unnecessarily delayed as she was transferred between BOP facilities, compromising the timeliness of her application. It is clear that this series of administrative oversights and procedural defects deprived De Cardenas of an important opportunity to make her case for section 212(c) relief. As the *Batanic* court observed, the traditional remedies for such oversights will not cure the procedural defect in this situation. *Cf. Drax v. Reno,* 338 F.3d 98 (2d Cir.2003) (instructing BIA "to fashion such relief as may be appropriate to return [petitioner] to the position in which he would have been absent the Immigration Judge's error.").

*Appropriate Relief*

As the *Batanic* court observed, where, as here, administrative oversights and procedural defects have resulted in the denial of important statutory relief to an alien defendant, traditional remedies will not suffice. But for the administrative delay in re-scheduling a hearing on her section 212(c) application, De Cardenas would have been permitted to make a timely claim for section 212(c) relief before an immigration judge. In her July 11, 1997 decision on De Cardenas's motion for a section 212(c) hearing, *nunc pro tunc,* Immigration Judge Marple reviewed the evidence that De Cardenas would have presented in a section 212(c) application and concluded that:

> On the record before me it appears highly unlikely that [De Cardenas] will ever become involved in drugs again. She has no apparent history of involvement in drug trafficking. While she has submitted no documentary evidence about the difficulty Colombian women have in finding work, especially if they are not young, this would not surprise me. . . . [De Cardenas'] working history has all occurred in the United States. To deport her to Colombia at such an age, after she has already been punished by such a long sentence, and to deprive her of her family in her final years seems to me to be inhumane, out of all proportion to her offense, and not justified by any valid governmental objective.
>
> Consequently, I find that if [De Cardenas'] eligibility for section 212(c) relief had not been eliminated by *Matter of Soriano,* I would rule that she should be granted section 212(c) relief in the exercise of discretion.

Memorandum of Decision, July 11, 1997. In concluding that section 212(c) relief was not available to De Cardenas, Judge Mar-

ple relied almost exclusively on the interim opinion of the Attorney General in *Matter of Soriano,* 21 I. & N. Dec. 516, 533 (Op. Att'y Gen. Feb. 21, 1997), which held that section 440(d) of AEDPA operates retroactively to restrict the availability of section 212(c) relief. As Judge Marple stated, but for the ruling in *Matter of Soriano,* she would have granted De Cardenas' application for section 212(c) relief, in the exercise of discretion, based on all of the circumstances of this case.

In *Drax v. Reno,* 2003 WL 21783250, the Second Circuit expressly addressed the continued validity of *Matter of Soriano* after the Supreme Court's decision in *St. Cyr.* In *Drax,* the Second Circuit noted that in *St. Cyr,* the Supreme Court held that "certain 1996 changes to the immigration laws . . . do not apply retroactively to petitioners . . . who pleaded guilty prior to the effective date of the changes." *Drax,* at 102. The Second Circuit also noted that, in *St. Cyr,* the Supreme Court determined that section 440(d) of AEDPA "did not operate retroactively to bar § 212(c) relief" to such petitioners. *Id.* In reviewing the decisions of the IJ and the BIA in Drax's case, the Second Circuit determined that reliance on *Matter of Soriano* was erroneous, because that decision contradicted the holdings of the Second Circuit and the Supreme Court in *St. Cyr.*

Here, Judge Marple and the BIA, like the IJ and BIA in *Drax,* relied on *Soriano* in concluding that De Cardenas was prohibited from receiving section 212(c) relief. The Second Circuit's ruling in *Drax* unequivocally demonstrates that the reasoning used by the Second Circuit and the Supreme Court in the *St. Cyr* decisions invalidates *Soriano.* In her July 11, 1997 decision, Judge Marple expressly noted that, but for *Soriano,* which she assumed directed retroactive application of the five-year bar, she would grant De Cardenas's

section 212(c) application. The BIA, on remand from the Second Circuit, held that Judge Marple had no authority to conduct a section 212(c) hearing *nunc pro tunc. Drax* makes clear, however, that "to the extent that [the petitioner] is prejudiced" by the erroneous application of *Soriano* in her administrative proceedings, the BIA should be "instructed to fashion such relief as may be appropriate to return [her] to the position in which [she] would have been absent the [ ] error." *Drax,* at 118. In effect, *Drax* granted the petitioner *nunc pro tunc* relief, thus making clear the authority to grant such relief to De Cardenas. Here, Judge Marple was prepared to grant De Cardenas' section 212(c) application on the merits. The only thing that prevented her from so doing was her belief that *Matter of Soriano* directed the retroactive application of the five-year bar to section 212(c) applications. Now that *Drax* makes clear both that the five-year bar does not apply retroactively in such cases and that *nunc pro tunc* relief can be fashioned, there is no reason why Judge Marple's decision on the merits to grant De Cardenas' application should not be implemented.

CONCLUSION

For the reasons stated above, De Cardenas' petition for a writ of habeas corpus is GRANTED. The case is remanded to BIA for entry of an order granting De Cardenas section 212(c) relief from deportation.

It is so ordered.