United States Court of Appeals
Fifth Circuit

**F I L E D**

**February 17, 2005**

Charles R. Fulbruge III
Clerk

In the United States Court of Appeals

For the Fifth Circuit

_____

No. 04-20164
_____

CARLOS ALVAREZ-HERNANDEZ,

                              Petitioner - Appellant,

versus

HIPOLITO M. ACOSTA, District Director;
ALBERTO GONZALES, U.S. Attorney General,

                              Respondents - Appellees.

_____

Appeal from the United States District Court
For the Southern District of Texas
_____

Before HIGGINBOTHAM, SMITH, and BENAVIDES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

This case involves an alien who pleaded guilty to a felony charge before Congress repealed the waiver of deportation made available by § 212(c) of the Immigration and Nationality Act, but whose judgment of conviction was entered afterward. Following the Board of Immigration Appeals' rejection of the alien's § 212(c) application, the district court entertained his habeas petition. The court rejected the BIA's conclusion that access to § 212(c) was foreclosed by entry of the judgment of conviction after § 212(c)'s repeal, but accepted the Government's argument that the alien was ineligible for relief because he had failed to accrue the requisite

seven years unrelinquished domicile in the United States by the date of his guilty plea. We reverse and remand.

I

Carlos Alvarez-Hernandez entered the United States illegally at the age of fifteen. He obtained temporary lawful residence through an amnesty program in 1988, and became a lawful permanent resident in 1991. He was arrested and indicted for aggravated delivery of a controlled substance, and pleaded guilty to this charge on November 7, 1994. That same day, the court issued an order accepting the plea and entered it on the minutes. The case was reset throughout 1995 and 1996. Final judgment of conviction imposing a sentence of ten years' probation was entered on March 7, 1997.

In August 1998, the INS commenced removal proceedings against Alvarez based on his aggravated felony controlled substance conviction. Alvarez admitted the truth of the INS's factual allegations, and sought relief under, *inter alia*, former § 212(c) of the Immigration and Nationality Act.[1] The Immigration Judge ordered Alvarez removed to El Salvador, and denied relief under § 212(c) on grounds that it had been repealed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA").[2] Alvarez appealed the IJ's ruling to the Board of

_____

[1] 8 U.S.C. § 1182(c) (repealed 1996).

[2] Pub. L. No. 104-208, Div. C, Title III, § 304(b), 110 Stat. 3009, 3597 (1996).

2

Immigration Appeals.

While Alvarez's appeal was pending before the BIA, the Supreme Court decided *INS v. St. Cyr*,[3] in which it held that the repeal of § 212(c) could not be applied retroactively to deny relief to aliens whose convictions were obtained by plea agreements and who would have been eligible for relief at the time of their pleas. Alvarez argued to the BIA that *St. Cyr* applied to him because he pleaded guilty to the drug charge in 1994, roughly two years before § 212(c) was repealed. The BIA rejected this argument, noting that Alvarez had not been formally convicted until 1997, and affirmed the decision of the IJ.

Alvarez filed a habeas corpus petition under 28 U.S.C. § 2241 arguing that *St. Cyr* entitled him to apply for relief under § 212(c). The Government moved for summary judgment, contending that *St. Cyr* did not apply because judgment was not entered on Alvarez's conviction until 1997. In addition, the Government argued that, even if the date of Alvarez's guilty plea controlled, he was ineligible for relief under § 212(c) because he lacked seven years of continuous lawful domicile on the date of his plea. The district court granted the Government's motion for summary judgment. The court found that the date on which a convicted alien's guilty plea is accepted determines whether the application of the IIRIRA bar to the alien's § 212(c) claim for relief produces

---

[3] 533 U.S. 289 (2001).

impermissible retroactive effect under *St. Cyr*.  However, the court also found that an alien must have been eligible for § 212(c) relief *at the time of his plea* in order to circumvent the IIRIRA bar.  Because Alvarez lacked the requisite seven years of lawful domicile required for § 212(c) relief at the time he entered his plea, the court denied his petition.  Alvarez filed a timely notice of appeal.

                              II

    We review the district court's dismissal of a habeas petition on summary judgment *de novo*.[4]  On appeal, Alvarez argues that the district court erred in finding that an alien must have accrued at least seven years of lawful domicile within the United States at the time of his plea in order to be eligible for § 212(c) relief under *St. Cyr*.  The Government, on the other hand, contends that the district court incorrectly found that *St. Cyr* looks to the date of an alien's guilty plea, and not the date of the judgment of conviction, to determine whether impermissible retroactive effect is present.

    Prior to its repeal, § 212(c) allowed the Attorney General to "waive deportation of eligible permanent resident aliens, including those [who had been] convicted of controlled substances offenses."[5]  In order to qualify for relief under § 212(c), an alien needed to

_____

    [4] *Madriz-Alvarado v. Ashcroft*, 383 F.3d 321, 327 (5th Cir. 2004).

    [5] *Ghassan v. INS*, 972 F.2d 631, 633-34 (5th Cir. 1992).

                              4

show that (1) he was admitted for permanent residence in the United States, and (2) he has "maintained a lawful unrelinquished domicile in the United States for seven consecutive years."[6]  With respect to the first requirement, our court has found that an alien's status as a lawful permanent resident terminates upon the administrative finalization of the alien's deportation order.[7] With respect to the second requirement, our court has found that an alien's period of lawful domicile begins running upon the alien's acquisition of some form of lawful resident status, either temporary or permanent, and terminates when the INS commences deportation proceedings against the alien.[8]

In 1996, Congress repealed the § 212(c) waiver through passage of the IIRIRA.  The INS adopted the position that this repeal applied to all removal proceedings initiated after April 1, 1997, the effective date of the IIRIRA, regardless of whether the affected alien pleaded guilty to the charge forming the basis of removal prior to the repeal.  The Supreme Court repudiated this position in *St. Cyr*.  Applying the retroactivity analysis set forth

---

[6] *Ashby v. INS*, 961 F.2d 555, 557 (5th Cir. 1992).

[7] *See Rivera v. INS*, 810 F.2d 540, 541 (5th Cir. 1987) (citing *In re Lok*, 18 I&N Dec. 101, 105 (BIA 1981)).

[8] *See Pritchard-Ciriza v. INS*, 978 F.2d 219, 223-25, 224 n.9 (5th Cir. 1992) (finding that an alien need only be "lawfully" present for seven years in order to apply for a § 212(c) waiver, and observing that "eligibility for § 212(c) relief is determined as of the date the order to show cause is issued").

in *Landgraf v. USI Film Products*,[9] the Court analyzed the text of the IIRIRA and concluded that it did not contain an unambiguous direction commanding retroactive effect with respect to its repeal of § 212(c).[10]

The Court then turned to the question of whether "depriving removable aliens of consideration for § 212(c) relief produces an impermissible retroactive effect for aliens who . . . were convicted pursuant to a plea agreement at a time when their plea would not have rendered them ineligible for § 212(c) relief."[11] The Court observed that the inquiry into whether a statute produces impermissible retroactive effect requires a determination about whether the statute attaches new legal obligations, duties, or disabilities to events or transactions "completed before its enactment."[12] This determination, the Court noted, should be "informed and guided by familiar considerations of fair notice, reasonable reliance, and settled expectations."[13]

The Court found that the IIRIRA's elimination of § 212(c) relief attached a new disability to those aliens who had reached plea agreements with the expectation that § 212(c) would be

---

[9] 511 U.S. 244 (1994).

[10] *St. Cyr*, 533 U.S. at 316-20.

[11] *Id.* at 320.

[12] *Id.* at 321 (citations and internal quotation marks omitted).

[13] *Id.* (citations and internal quotation marks omitted).

available to them.[14]    The Court observed that it would be contrary to "familiar considerations of fair notice, reasonable reliance, and settled expectations" to deprive such aliens of any possibility of relief under § 212(c) when they had relied upon "settled practice, the advice of counsel, and perhaps even assurances in open court that the entry of the plea would not foreclose § 212(c) relief."[15] Based in part on these observations, the Court held that "§ 212(c) relief remains available for aliens, like respondent, whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief *at the time of their plea under the law then in effect*."[16]

A

We first address Alvarez's argument that the district court erred in finding that § 212(c) relief was not available to him under *St. Cyr* because he lacked the requisite seven years continuous domicile within the United States at the time of his plea.

The district court's finding was based solely upon its

---

[14] *Id.* ("IIRIRA's elimination of any possibility of § 212(c) relief for people who entered into plea agreements with the expectation that they would be eligible for such relief clearly attaches a new disability, in respect to transactions or considerations already past." (citations and internal quotation marks omitted)).

[15] *Id.* at 323.

[16] *Id.* at 326 (emphasis added).

conclusion that the language of *St. Cyr* extends eligibility for § 212(c) relief only to those aliens who would have been immediately eligible for it "at the time of their plea." The district court reached this conclusion by seizing upon the words "at the time of their plea" to the exclusion of the surrounding text and in contravention of the policy motivating the Supreme Court's decision in *St. Cyr*. The Court in *St. Cyr* explicitly chose to extend § 212(c) eligibility to aliens who would have been eligible for such relief "at the time of their plea *under the law then in effect.*"[17] Under the law of our circuit in effect at the time of Alvarez's guilty plea, he was not required to have accumulated seven years of unrelinquished domicile at the time of his plea in order to qualify for relief under § 212(c). Rather, he was permitted to continue accruing additional time toward his period of domicile up to the point at which removal proceedings were initiated against him.[18]

At the time of his guilty plea, Alvarez had accrued roughly six years of continuous lawful domicile within the United States. Given the fact that removal proceedings may not be initiated until after judgment is entered, Alvarez likely anticipated that he would be able to accrue an additional period of domicile before proceedings began. Conditioning eligibility for § 212(c) relief

---

[17] *Id.* (emphasis added).

[18] *See Pritchard-Ciriza*, 978 F.2d at 224 n.9.

upon Alvarez's accrual of seven years of lawful domicile *at the time of his plea* would serve to thwart any reasonable expectation he may have formed, in light of existing law, that he would be allowed the opportunity to accrue an additional period of domicile following the entry of his plea and before removal proceedings were initiated.[19]  Thus, we find that *St. Cyr* does not require an alien to have accrued seven years of lawful domicile at the time of his or her plea in order to qualify for relief under § 212(c).

This conclusion finds support in a recently promulgated regulation providing for a special motion allowing aliens who pleaded guilty or nolo contendere to certain crimes before April 1, 1997, to seek § 212(c) relief.  The regulation provides that an alien seeking relief must establish that he or she:

---

[19] Our court has recognized the importance placed by the Supreme Court upon protecting the reliance interests of aliens who, prior to the IIRIRA, had waived their trial rights and entered guilty pleas in exchange for an opportunity to apply for § 212(c) relief.  *See Ojeda-Terrazas v. Ashcroft*, 290 F.3d 292, 301 (5th Cir. 2002) ("The [*St. Cyr*] Court found that aliens, like St. Cyr, who entered plea agreements with the government before IIRIRA became effective 'almost certainly' relied upon the likelihood of receiving a discretionary waiver of deportation from the Attorney General – a possibility that the new IIRIRA provision eliminated – when deciding to forgo their right to a trial.").  Other circuits have likewise noted the importance that protecting reliance interests played in the Court's *St. Cyr* decision.  *See Ponnapula v. Ashcroft*, 373 F.3d 480, 492 (3d. Cir. 2004) ("*St. Cyr* is principally concerned with the reasonable reliance interests of aliens who enter into plea agreements as a class."); *Rankine v. Reno*, 319 F.3d 93, 102 (2d. Cir. 2003) ("[T]he issue of reliance has played a central role in the Supreme Court's and the circuit court's reasoning with respect to the retroactivity of the IIRIRA and AEDPA."); *Chambers v. Reno*, 307 F.3d 284, 289 (4th Cir. 2002) ("In reaching [its] conclusion, the Court focused on an alien's reasonable reliance on the possibility of discretionary relief under INA § 212(c) as one of the most important factors prompting him to forego trial and enter a plea agreement."); *Domond v. INS*, 244 F.3d 81, 86 (2d. Cir. 2001) (finding that expectation interests of alien in *St. Cyr* were "especially strong" when his guilty plea was entered before the effective date of the AEDPA, "because an alien is likely to consider the immigration consequences when deciding whether and how to plead").

9

> (1) Was a lawful permanent resident and is now subject to a final order of deportation or removal;
>
> (2) Agreed to plead guilty or nolo contendere to an offense rendering the alien deportable or removable, pursuant to a plea agreement made before April 1, 1997;
>
> (3) Had seven consecutive years of lawful unrelinquished domicile in the United States *prior to the date of the final administrative order of deportation or removal;* and
>
> (4) Is otherwise eligible to apply for section 212(c) relief under the standards that were in effect at the time the alien's plea was made, regardless of when the plea was entered by the court.[20]

The third requirement clearly provides that, in order to qualify for § 212(c) relief, an alien must accrue seven years of lawful domicile by the date of the alien's final order of deportation. In its response to comments received on this provision during the notice and comment period, the Department of Justice explicitly rejected the recommendation that the regulation be amended to require that an alien have seven consecutive years of lawful domicile "at the time the plea was entered" in order to qualify for § 212(c) relief under the special motion.[21] The Department buttressed this refusal by observing that the "Board [of Immigration Appeals] has long held that an alien's lawful domicile terminates upon the entry of the final administrative order of

---

[20] 8 C.F.R. § 1003.44(b)(1)-(4) (2004) (emphasis added).

[21] 69 Fed. Reg. 57,826, 57,831 (Sept. 28, 2004).

deportation."[22]  Although the regulation applies specifically to special motions for § 212(c) relief, we note that it constitutes relevant persuasive authority in this habeas appeal.[23]

Because the law of our circuit at the time Alvarez entered his guilty plea allowed aliens to accrue additional time toward their total period of continuous unrelinquished domicile following their plea of guilty to a removable offense, we find that Alvarez need not have accrued seven years of lawful domicile at the time of his plea in order to be eligible for § 212(c) relief under *St. Cyr*. The district court erred in holding otherwise.

B

We next address the Government's argument that the date that judgment of conviction is entered determines whether application of the IIRIRA bar to an alien's § 212(c) claim for relief is impermissible under *St. Cyr*. Under this interpretation of *St. Cyr*, an alien who, like Alvarez, pleaded guilty to a removable offense before the effective date of the IIRIRA, but had the misfortune of having his or her date of final conviction delayed until after the effective date, would be precluded from applying for § 212(c)

---

[22] *Id.* (citing *In re Cerna*, 20 I&N Dec. 399 (BIA 1991)).

[23] We need not conduct a *Chevron* analysis here as our holding in this case rests upon our interpretation of *St. Cyr*, and does not require a finding regarding the appropriate level of deference to be afforded the regulation. *See Edelman v. Lynchburg College*, 535 U.S. 106, 114 n.8 (2002) (noting that there is no need to resolve deference issues when the need for deference is obviated by the court's independent decision to adopt the rule set forth in the regulation).

relief.

In support of this interpretation, the Government points to the Supreme Court's observation in *St. Cyr* that one of the important consequences of an alien's guilty plea is the fact that he or she becomes subject to deportation.[24] Noting that an alien cannot become subject to deportation until after conviction and entry of final judgment, the Government reasons that the Court's observation indicates its intent to place the date that judgment of conviction is entered at the center of its retroactivity analysis in *St. Cyr*.

This interpretation ignores both the language of *St. Cyr* and the policy underlying it. In *St. Cyr*, the Court repeatedly emphasized the date of an alien's *guilty plea* as the point at which the alien relies to his detriment upon the availability of § 212(c) relief.[25] Significantly, the Court observed that "[p]lea agreements involve a *quid pro quo* between a criminal defendant and the government" in which the defendant waives several of his constitutional rights in "exchange for some perceived benefit."[26] The Court found that, prior to the AEDPA and IIRIRA, aliens "almost certainly" pleaded guilty to removable crimes in reliance upon the

---

[24] 533 U.S. at 314-15 ("Two important legal consequences ensued from respondent's entry of a guilty plea in March 1996: (1) He became subject to deportation, and (2) he became eligible for a discretionary waiver of that deportation under the prevailing interpretation of § 212(c).").

[25] *Id.* at 321-24.

[26] *Id.* at 321-22.

12

likelihood of being granted § 212(c) relief, rendering the elimination of § 212(c) relief by the IIRIRA an act possessed of "obvious and severe retroactive effect."[27]  The Court concluded by holding that § 212(c) relief must remain available for aliens "whose convictions were obtained through *plea agreements*," and who "would have been eligible for § 212(c) relief at the time of their *plea* under the law then in effect."[28]  The focus of these words upon the date of an alien's plea as the point at which an alien's reliance interest arises is unmistakable.

The Government also relies upon the decision of the Third Circuit in *Perez v. Elwood*.[29]  In *Perez*, the Third Circuit held that an alien was not eligible to apply for § 212(c) relief when, following a jury trial, he was not convicted until almost three months after the effective date of the IIRIRA.  *Perez* is distinguishable from the present case on two important grounds.  First, *Perez* dealt with an alien who had refused to enter a guilty plea and was subsequently tried by a jury.  Second, the alien in *Perez* argued that he was entitled to § 212(c) relief on grounds that the criminal conduct underlying his conviction occurred before the waiver's repeal.

Unlike Alvarez, the alien in *Perez* did not waive important

---

[27] *Id.* at 325.

[28] *Id.* at 326 (emphasis added).

[29] 294 F.3d 552 (3d. Cir. 2002).

constitutional rights in order to secure an opportunity to apply of for § 212(c) relief. Rather, the alien in *Perez* opted to go to trial, and subsequently advanced the tenuous (and ultimately unsuccessful) argument that his eligibility to apply for § 212(c) relief under *St. Cyr* was properly dictated by the date on which his criminal conduct occurred. A number of courts have rejected this argument, finding that those aliens who opted to go to trial prior to § 212(c)'s repeal lacked reliance upon § 212(c) relief, precluding a finding of impermissible retroactivity.[30] Alvarez, on the other hand, affirmatively waived his constitutional trial rights in reliance upon an opportunity to seek § 212(c) relief. Thus, unlike the alien in *Perez*, Alvarez acquired an important reliance interest entitled to protection as of the date that it came into being – the date of his plea.

This conclusion finds support not only in the language of *St. Cyr*, but in the regulations recently promulgated by the Department of Justice as well. As we noted, the second requirement for an

---

[30] *See Rankine*, 319 F.3d at 102 ("Unlike aliens who pled guilty so as to ensure their eligibility for relief, the petitioners here and others like them aimed to eliminate the possibility of deportation altogether by being found not guilty of the crimes of which they were accused."); *Armendariz-Montoya v. Sonchik*, 291 F.3d 1116, 1121 (9th Cir. 2002) ("Unlike aliens who pleaded guilty, aliens who elected a jury trial cannot plausibly claim that they would have acted any differently if they had known about [the AEDPA]."); *LaGuerre v. Reno*, 164 F.3d 1035, 1041 (7th Cir. 1998) ("It would border on the absurd to argue that . . . aliens might have decided not to commit drug crimes, or might have resisted conviction more vigorously, had they known that if they were not only imprisoned but also, when their prison term ended, ordered deported, they could not ask for a discretionary waiver of deportation."); *but see Ponnapula*, 373 F.3d at 494 (finding that alien who rejected a plea agreement and went to trial did so in reliance upon the availability of § 212(c) relief).

14

alien to be eligible for § 212(c) relief via a special motion is that the alien "[a]greed to plead guilty or nolo contendere to an offense rendering the alien deportable or removable, pursuant to a plea agreement made before April 1, 1997."[31] This regulation says nothing about the "date of conviction," requiring only that the alien enter a plea prior to the effective date of the IIRIRA in order to qualify for § 212(c) relief. A second newly promulgated regulation provides that "[a]n alien whose convictions for one or more aggravated felonies were entered pursuant to *plea agreements* made on or after November 29, 1990, but prior to April 24, 1996, is ineligible for section 212(c) relief only if he or she has served a term of imprisonment of five years or more for [specific] aggravated . . . felonies."[32] In response to comments on these regulations, the Department of Justice found that, "consistent with the Supreme Court's decision in *St. Cyr*, the key in deciding the extent to which an alien is eligible for section 212(c) relief rests on the available relief at the time the alien and the prosecutor made the *plea agreement*."[33]

We find that the date of a plea of guilty, and not the date that judgment of conviction is ultimately entered, is determinative of whether the retroactive application of the IIRIRA bar to an

---

[31] 8 C.F.R. § 1003.44(b)(2).

[32] 8 C.F.R. § 1212.3(f)(4)(i) (2004) (emphasis added).

[33] 69 Fed. Reg. at 57,829 (emphasis added).

15

alien's claim for § 212(c) relief is impermissible under *St. Cyr*. Accordingly, because he pleaded guilty before the effective date of the IIRIRA, Alvarez is not precluded from seeking § 212(c) relief.

III

In summary, we hold that, when an alien enters into a plea bargain, the retroactivity analysis set forth in *St. Cyr* is triggered by the date of the guilty plea and not the date that judgment of conviction is entered. In addition, we hold that an alien need not have accrued seven years of continuous, unrelinquished domicile at the time of his plea in order to be eligible for § 212(c) relief under *St. Cyr*. Here, Alvarez pleaded guilty to the offense forming the basis for his removal proceedings before § 212(c) was repealed by the IIRIRA. In addition, he accrued over seven years of unrelinquished domicile prior to the initiation of his removal proceeding. Accordingly, we reverse the district court's order denying Alvarez habeas relief, and remand to the district court with instructions to grant Alvarez's habeas petition.

REVERSED and REMANDED with instructions.