In the
# United States Court of Appeals
for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 7, 2006

Charles R. Fulbruge III
Clerk

m 05-50102

JOSE GUADALUPE MUNOZ-SIGALA,

Petitioner-Appellant,

VERSUS

MARC J. MOORE,
AS FIELD OFFICE DIRECTOR FOR DETENTION AND REMOVAL
FOR THE BUREAU OF IMMIGRATION AND CUSTOMS ENFORCEMENT;
BUREAU OF IMMIGRATION AND CUSTOMS ENFORCEMENT,
AS AN AGENCY OF THE GOVERNMENT OF THE UNITED STATES OF AMERICA;
DEPARTMENT OF HOMELAND SECURITY,
AS AN AGENCY OF THE GOVERNMENT OF THE UNITED STATES OF AMERICA;
MICHAEL CHERTOFF,
SECRETARY, DEPARTMENT OF HOMELAND SECURITY;
ALBERTO R. GONZALES,
UNITED STATES ATTORNEY GENERAL,

Respondents-Appellees.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

JOSE GUADALUPE MUNOZ-SIGALA,

Petitioner,

VERSUS

ALBERTO R. GONZALES,
UNITED STATES ATTORNEY GENERAL,

Respondent.

Petitions for Review of Orders of
the Board of Immigration Appeals
ɱ A37 437 097

Before SMITH, WIENER, and OWEN,
Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

In these consolidated cases, Jose Munoz-Sigala petitions for review of a decision of the Board of Immigration Appeals ("BIA") affirming a removal order by an immigration judge ("IJ") and the subsequent denial by the BIA of a motion to reopen his case, and he appeals an order of the district court dismissing his petition for writ of habeas corpus. The appeal has been converted into a petition for review. For the reasons stated, we deny both petitions for review.

I.

Munoz-Sigala, a citizen of Mexico, became a lawful permanent resident of the United States in 1982. In 1992 he was indicted for aggravated delivery of a controlled substance, namely over 400 grams of cocaine; on April 29, 1996, he pleaded guilty and was given a suspended sentence. The former Immigration and Naturalization Service ("INS") placed him in removal proceedings in 1999, charging that he was removable as an alien convicted of an aggravated felony and as an alien having an illegal drug conviction. The IJ sustained the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

charges and ordered him removed to Mexico.

Munoz-Sigala appealed to the BIA, which affirmed. A subsequent petition for writ of habeas corpus, based on 28 U.S.C. § 2241, was denied by the district court in 2000 for lack of jurisdiction. The court based its decision on *Max-George v. Reno*, 205 F.3d 194 (5th Cir. 2000), in which this court held that the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") had deprived the district courts of jurisdiction to issue writs of habeas corpus under § 2241 to certain criminal aliens. The Supreme Court, however, effectively overruled *Max-George* in *INS v. St. Cyr*, 533 U.S. 289, 314 (2001), holding, *inter alia*, that such jurisdiction had not been repealed by IIRIRA.

In light of *St. Cyr*, Munoz-Sigala filed another § 2241 habeas petition, asserting that he had been unlawfully denied the ability to seek a discretionary waiver of his removal order under INA § 212(c). Although acknowledging that the Antiterrorism and Effective Death Penalty Act ("AEDPA") had denied § 212(c) relief to aliens convicted of aggravated felonies, he argued that the effective date of AEDPA was uncertain at the time of his conviction and that, under *St. Cyr*, § 212(c) relief remained available to aliens, such as him, who were eligible for relief before the enactment of AEDPA and IIRIRA. The district court dismissed the petition for lack of jurisdiction without reaching the merits, finding that the "in custody" requirement of § 2241 had not been met. Munoz-Sigala appealed that decision.

Munoz-Sigala then filed a motion with the BIA seeking to reopen his case, making arguments similar to those he had raised in his second § 2241 petition in the district court. The BIA held that the motion to reopen was untimely. Further, it held that AEDPA took effect on April 24, 1996, five days before Munoz-Sigala pleaded guilty on April 29, 1996. Thus, Munoz-Sigala's reliance on *St. Cyr* was misplaced because his expectations at the time of the guilty plea were not upset by a change in the law that had occurred before he entered his plea.

After the BIA denied his motion to reopen Munoz filed a third § 2241 habeas petition on May 6, 2005. The district court transferred the case to this court as required by the REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231 (May 11, 2005). We granted a motion to consolidate these two matters. Munoz-Sigala challenges the BIA's decision affirming the IJ's removal order and the BIA's denial of the motion to reopen.

II.

Initially we deal with the effect of the REAL-ID Act on Munoz-Sigala's appeal of the district court's dismissal of his habeas petition for lack of jurisdiction because he was not "in custody."[2] Section 106 of the Act divested district courts of jurisdiction over challenges to removal orders in § 2241 proceedings and designated the courts of appeals as the sole fora for such challenges via petitions for review. Pub. L. No. 109-13, 119 Stat. 231, 310; *Rosales v. Bureau of Immigration & Customs Enforcement*, 426 F.3d 733, 735-36 (5th Cir. 2005), *cert. denied*, 126 S. Ct. 1055 (2006). This section applies "to cases in which the final administrative order of removal,

---

[2] The REAL-ID Act is one part of the Emergency Supplemental Appropriations Act for Defense, the Global War on Terror, and Tsunami Relief, 2005, Pub. L. No. 109-13, 119 Stat. 231 (May 11, 2005).

deportation, or exclusion was issued before, on, or after the date of enactment of this provision." Pub. L. No. 109-13, 119 Stat. 231, 311, § 106(b). Further, habeas petitions, such as Munoz-Sigala's, that are challenging removal orders on appeal as of May 11, 2005, are converted into petitions for review. *Rosales*, 426 F.3d at 736. Thus, Munoz-Sigala's habeas petition challenging his removal is converted into a petition for review of the BIA's decision to affirm his removal order, and the district court's conclusion that it lacked habeas jurisdiction is moot and thus vacated.

We review the BIA's rulings of law *de novo*, but we defer to the BIA's interpretation of immigration regulations if the interpretation is reasonable. *Lopez-Gomez v. Ashcroft*, 263 F.3d 442, 444 (5th Cir. 2001). A denial by the BIA of a motion to reopen is reviewed for abuse of discretion. *Panjawani v. Gonzales*, 401 F.3d 626, 632 (5th Cir. 2005). The "tenor of the Attorney General's regulations . . . plainly disfavor[s] motions to reopen." *INS v. Abudu*, 485 U.S. 94, 110 (1988).

Under the former INA § 212(c), 8 U.S.C. § 1182(c), an alien was permitted to seek a discretionary waiver of deportation if he had been a lawful permanent resident with an unrelinquished domicile of seven years. *Ashby v. INS*, 961 F.2d 555, 557 (5th Cir. 1992). In 1996, in § 440(d) of AEDPA, Congress precluded such relief for aliens convicted of, *inter alia*, an aggravated felony or drug offense. Pub. L. No. 104-132, 110 Stat. 1214, 1277; *St. Cyr*, 533 U.S. at 297. Later that year Congress enacted IIRIRA, which repealed § 212(c). *St. Cyr*, 533 U.S. at 297. In *St. Cyr*, however, the Court held that the repeal of § 212(c) cannot be applied retroactively to deprive relief to aliens "whose convictions were obtained through plea agreements and who,

notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." *Id.* at 326.

The BIA concluded that *St. Cyr* is inapplicable to Munoz-Sigala because he pleaded guilty five days after the passage of AEDPA and thus was ineligible for § 212(c) relief at the time of his plea. In *Alvarez-Hernandez v. Acosta*, 401 F.3d 327, 334 (5th Cir. 2005), we held that where there is a plea agreement, the *St. Cyr* analysis is triggered by the date of the guilty plea, not the date judgment is entered. The defendant in *Alvarez-Hernandez* pleaded guilty approximately two years before the passage of AEDPA and IIRIRA, but the final judgment was not entered until after both laws had become effective. We held that because § 212(c) was in effect at the time of the plea, the defendant had acquired an "important reliance interest entitled to protection" and that this interest came into being on "the date of the plea." *Id.* at 334. Thus, if the plea was made before the effective date of AEDPA, the retroactivity analysis of *St. Cyr* was triggered.

Munoz-Sigala's guilty plea and judgment of conviction were entered on the same day, April 29, 1996. Because this was five days after AEDPA became effective, under *Alvarez-Hernandez* the retroactivity concerns of *St. Cyr* do not apply.

Munoz further contends that the determinative date for the *St. Cyr* analysis should be the date the plea *agreement* was reached, not the date on which he actually pleaded guilty. He does not state on what date his plea agreement was reached, but only that because of the four years that elapsed between the commission of his crime and his guilty plea it is likely that the plea agreement was reached before April 24,

4

1996, the date AEDPA became effective.

We need not decide, in this case, whether the *St. Cyr* analysis is triggered by the date the plea agreement was reached or the date the agreement was accepted by the court. Even if we were to hold that the determinative date is the one on which the defendant and prosecutor reached a plea agreement, Munoz-Sigala would have the burden of establishing that date.

"The alien has the burden of establishing eligibility for relief, including the date on which the alien and the prosecution agreed on the plea of guilt or nolo contendere." 8 C.F.R. § 1003.44(b). The explanation of this rule articulates the rationale behind it: "The nature of the comment . . . underscores the need to make clear that the alien seeking section 212(c) relief has the burden of establishing the plea agreement date, and the alien is in the best position to do so because the alien was present (not the DHS or the immigration judge) and is most likely to possess the documents reflecting the plea agreement." Section 212(c) Relief for Aliens with Certain Criminal Convictions Before April 1, 1997, 69 Fed. Reg. 57,826, 57,830 (Sept. 28, 2004).

Munoz-Sigala claims that, even given that the date of his guilty plea was five days after the effective date of AEDPA, he was eligible for § 212(c) relief because at the time of his plea the effective date of § 440(d) of AEDPA was uncertain. He claims that the BIA clarified the effective date in *Matter of Soriano*, 21 I.&N. Dec. 516 (BIA June 27, 1996), and that before that decision it was not known for sure when AEDPA had become effective. Munoz-Sigala asserts that at the time of his plea, which was entered before *Soriano* was decided, he was uncertain whether AEDPA was in effect, so he relied to his detriment on the availability of § 212(c) relief.

This argument is unavailing. *Soriano* dealt with an alien who had applied for § 212(c) relief before the passage of § 440(d) of AEDPA. The BIA held that AEDPA became effective on the day it was passed, April 24, 1996, but the bar did not retroactively apply to proceedings that were already pending. *Soriano*, 21 I.&N. Dec. at 519-21. Because Munoz-Sigala did not seek § 212(c) relief before AEDPA was enacted, the exception does not apply to him.

Further, the BIA did not find that the effective date of AEDPA was ambiguous, but rather that the language of AEDPA, in accord with general principles of statutory construction, indicates that the law became effective on the date of its passage. *Id.* On that date AEDPA precluded § 212(c) relief for aliens with aggravated felony convictions, and thus Munoz-Sigala's contention that he detrimentally relied on the availability of such relief after that date is unpersuasive.

For the reasons explained, the petitions for review are DENIED.