Dimitrios KARAGEORGIOUS,
Athanassios Karageorgious,
Petitioners,

v.

John ASHCROFT, Attorney
General, Respondent.

Docket No. 02–4170.

United States Court of Appeals,
Second Circuit.

Argued May 10, 2004.

Decided June 14, 2004.

Michael P. Diraimondo, Melville, N.Y. (Marialaina L. Masi, Mary Elizabeth Delli-Pizzi, DiRaimondo & Masi, Melville, NY, of counsel), for Petitioners.

Megan L. Brackney, Assistant United States Attorney, Southern District of New York, New York City (David N. Kelley, United States Attorney, Kathy S. Marks, Assistant United States Attorney, Southern District of New York, New York City, of counsel), for Respondent.

Before: FEINBERG, MESKILL and CABRANES, Circuit Judges.

MESKILL, Circuit Judge:

Petitioners Dimitrios and Athanassios Karageorgiou[1] petition this Court pursuant to section 242 of the Immigration and Nationality Act of 1952, as amended (INA), 8 U.S.C. § 1252 (2000), to review decisions by the Board of Immigration Appeals (BIA) dismissing their appeals from a decision of an immigration judge (IJ) ordering them removed to Greece and pretermitting[2] their application for suspen-

---

**1.** Although the official case caption lists petitioners' last name as Karageorgious, the record reflects that Karageorgiou is the proper spelling.

**2.** In this context, the term "pretermit" means

sion of deportation. For the reasons set forth herein, we deny the petition.

## BACKGROUND

Petitioners, a father and son, are natives and citizens of Greece. They entered the United States in March 1984 and were authorized by visa to remain as nonimmigrant visitors for pleasure until September 1984. They remained in the United States without authorization after their visas expired.

On March 28, 1997, petitioner Dimitrios Karageorgiou presented himself to the Immigration and Naturalization Service (INS)[3] and filed on behalf of himself and his minor child, petitioner Athanassios, an application for suspension of deportation pursuant to former section 244(a)(1) of the INA, 8 U.S.C. § 1254(a)(1), *repealed by* the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub.L. No. 104–208, § 308(b), 110 Stat. 3009–546, 615 (1996), together with the required $100 filing fee. He submitted the application in anticipation of the April 1, 1997 effective date of IIRIRA, which re-

classified deportation proceedings as removal proceedings. More significantly, IIRIRA repealed the discretionary relief of suspension of deportation and replaced it with discretionary relief entitled cancellation of removal. IIRIRA § 304(a)(3). Petitioners were potentially eligible for suspension of deportation but are not eligible for cancellation of removal.[4] It was their intent to present themselves to the INS prior to the effective date of IIRIRA in order that they would remain eligible for suspension of deportation even after IIRIRA became effective and suspension of deportation ceased to exist as an avenue of relief.

On May 27, 1998, well after IIRIRA went into effect, the INS served petitioners with a Notice to Appear charging that each was removable pursuant to section 237(a)(1)(C)(i) of the INA, 8 U.S.C. § 1227(a)(1)(C)(i) (1999), because he was admitted as a nonimmigrant and failed to maintain or comply with the conditions of the nonimmigrant status under which he was admitted. Removal proceedings com-

"[t]o ignore or disregard purposely." Black's Law Dictionary 1206 (7th ed. 1999). The IJ is authorized to pretermit an application for suspension of deportation if "the applicant has failed to establish statutory eligibility for relief." 8 C.F.R. § 240.21(c)(1).

3. As of March 1, 2003, the United States Department of Homeland Security, Immigration and Customs Enforcement replaced the INS as the agency responsible for the enforcement of the immigration laws. Because the relevant rulings were made prior to the change in title, however, we refer to the agency throughout the opinion as the INS.

4. To qualify for suspension of deportation, a non-criminal alien had to be "deportable." In addition, he was required to demonstrate that (1) he had been continuously present in the United States for the seven years preceding the submission of his application; (2) he was a person of good moral character; and

(3) his deportation would, in the opinion of the Attorney General, result in "extreme hardship" to himself or to a United States citizen or lawful permanent resident spouse, parent, or child of the applicant. *Rojas–Reyes v. INS*, 235 F.3d 115, 120 (2d Cir.2000) (citing 8 U.S.C. § 1254(a)(1) (1994)). Petitioners believe that they could have qualified under these standards.

By contrast, to qualify for cancellation of removal, the alien must satisfy stricter eligibility standards, including a longer period of residence in the United States than was required for suspension of deportation. *Rojas–Reyes*, 235 F.3d at 120 (citing 8 U.S.C. § 1229b(b)(1)). More importantly, an applicant must demonstrate that his rem oval would result in extreme hardship to a United States citizen or lawful permanent resident spouse, parent or child. Hardship to the alien himself is not sufficient to qualify for cancellation of removal. Consequently, petitioners are not eligible for this form of relief.

menced in July 1998 before an IJ. Petitioners conceded that they were subject to removal but maintained that they were eligible for discretionary relief from deportation under former section 244(a)(1) of the INA because they had applied for such relief prior to the repeal of that section. In the alternative, they requested that they be permitted to depart voluntarily.

On May 11, 1999, the IJ issued an oral decision in which she ordered petitioners removed as charged in the Notices to Appear and pretermitted the application for suspension of deportation. The IJ rejected petitioners' argument that the INS was required to adjudicate the suspension application, noting that petitioners were ineligible for suspension because suspension of deportation is not an available form of relief in removal proceedings. She further held that even if the INS could have placed petitioners in deportation proceedings despite IIRIRA's repeal of those proceedings, the IJ had no authority to review the INS's exercise of prosecutorial discretion to place petitioners in removal proceedings instead.

Petitioners appealed the IJ's ruling to the BIA. On April 25, 2002, the BIA issued two separate orders, one for each petitioner, affirming without opinion and adopting the IJ's decisions to remove them and pretermit their suspension application. Because the BIA's orders adopted the opinion of the IJ, the IJ's opinion became the "final agency determination" under 8 C.F.R. § 3.1(a)(7). This petition for review followed.

## DISCUSSION

Petitioners seek a ruling on the merits of their application for suspension of de-

portation. In support of their petition for review, they present two arguments. First, they suggest that they have a due process right to a decision by the Attorney General on the merits of their suspension application. Second, they submit that because they filed an application for suspension of deportation, the INS became statutorily bound to consider it pursuant to former section 244(a)(1) of the INA.[5]

### I. *Due Process*

■ Petitioners first argue that the government violated their due process rights because IIRIRA is impermissibly retroactive as applied to them. Specifically, they maintain that IIRIRA's elimination of suspension of deportation retroactively denies them an affirmative right they previously enjoyed. Their claim seems to be that because they presented themselves to the INS under the belief that the INS would consider their application for suspension, to subsequently deny them a decision on the merits of their application would amount to an impermissibly retroactive application of IIRIRA.

At least one other Court of Appeals has dealt with essentially the same issue. The Ninth Circuit held that IIRIRA's elimination of suspension of deportation does not have an impermissibly retroactive effect when applied to aliens who applied for suspension prior to the effective date of IIRIRA but who were placed in removal proceedings once IIRIRA went into effect. *Jimenez–Angeles v. Ashcroft*, 291 F.3d 594, 602 (9th Cir.2002). We agree with that holding.

■ "A statute has retroactive effect when it takes away or impairs vested

---

5. In addition to these two arguments, petitioners initially claimed that the BIA's summary affirmance without opinion of the IJ's ruling violated their due process rights, an argument now precluded by our decision in *Zhang v. U.S. Dep't of Justice*, 362 F.3d 155, 156–59 (2d Cir.2004) (summary decisions by the BIA do not violate due process).

rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." *INS v. St. Cyr*, 533 U.S. 289, 321, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (citations and internal quotation marks omitted). In some cases, of course, the repeal of suspension of deportation does have a retroactive effect and thus implicates due process concerns. In *St. Cyr*, for instance, the Supreme Court addressed the issue of aliens who pleaded guilty to felonies, and thus gave up numerous substantive rights (such as the right to a jury trial), under the assumption that they might then be eligible for relief from deportation despite their convictions. *Id.* at 321–22, 121 S.Ct. 2271.[6] The Court held that aliens who had pleaded guilty under these circumstances were entitled to a decision on the merits by the Attorney General (or his delegates) when they applied for relief from deportation, notwithstanding IIRIRA's elimination of such relief. The Court reasoned that the aliens had given up substantive rights when they decided to plead guilty, and that the application of IIRIRA would be impermissibly retroactive because it would deny them the expected benefits attached to their decision to plead. *Id.* at 321–24, 121 S.Ct. 2271.

We do not accept petitioners' contention that their position is similar to that of those in *St. Cyr*. The repeal of suspension of deportation does not apply retroactively to these petitioners because it does not attach any new legal consequences to petitioners' pre-IIRIRA conduct. As the Third Circuit explained in *Uspango v. Ashcroft*, petitioners "gave up no rights by filing the[ir] petition [for suspension]." 289 F.3d 226, 230 (3rd Cir.2002). Petitioners had no right to remain "living illegally and undetected in the United States." *Jimenez–Angeles*, 291 F.3d at 602. Therefore, they relinquished no rights and acquired no new obligations when they turned themselves in to the INS. In effect, petitioners are no different from aliens who chose not to apply for suspension of deportation prior to the date on which IIRIRA became effective. The application of IIRIRA to these petitioners does not implicate due process concerns.

## II. *Availability of Suspension of Deportation Under Former Section 244(a)(1) of the INA*

■ Petitioners next argue that, under former section 244(a)(1), the Attorney General was required to consider their application for suspension of deportation once they submitted it. The government counters that an application for suspension of deportation may be made only during the course of a deportation proceeding in which an IJ finds the applicant to be deportable.

The statute that formerly governed deportation proceedings and applications for suspension of deportation is unclear as to whether it permits an individual to file an application for suspension of deportation outside of the context of deportation proceedings. Former section 244(a)(1) of the INA permitted the Attorney General to suspend the deportation of an alien who "is deportable under any law of the United States," provided the alien meets certain other criteria. 8 U.S.C. § 1254(a)(1) (1994). The phrase "is deportable" is am-

---

6. Indeed, in some cases, aliens pleaded guilty pursuant to plea agreements in order to receive sentences that would allow them to remain eligible for suspension of deportation, rather than proceed to trial and risk receiving sentences that would make them statutorily ineligible for suspension. *St. Cyr*, 533 U.S. at 323–24, 121 S.Ct. 2271 (citing *Jideonwo v. INS*, 224 F.3d 692, 699 (7th Cir.2000)).

biguous. On the one hand, it may refer simply to an alien who meets the criteria for deportability. On the other hand, it may refer to an alien who has been *found* deportable and is thus subject to deportation. If, as the government argues, the latter interpretation is correct, then the application was not properly before the INS, and neither the INS nor the IJ had any discretion to consider it.

The BIA has addressed this issue before. In *Matter of Ching*, 12 I. & N. Dec. 710, 712 (B.I.A.1968), the BIA undertook an analysis of the language of the statute and related regulations and concluded that the phrase "is deportable" must "relate[ ] to an alien who has been charged with and found deportable." Every court that has addressed this issue has adopted the position of the BIA either as a result of giving agency deference to the decisions of the BIA or by undertaking independent analyses of the statute and regulations. *Cervantes v. Perryman*, 1997 WL 97701, at *3–*4 (N.D.Ill. Feb.27, 1997) (*"Cervantes II "*); *Cervantes v. Perryman*, 954 F.Supp. 1257, 1263–65 (N.D.Ill.1997) (*"Cervantes I "*); *Alvidres–Reyes v. Reno*, 981 F.Supp. 1008, 1010–12 (W.D.Tex.1997), *vacated on other grounds*, 180 F.3d 199 (5th Cir.1999); *Pincilotti v. Reno*, 1996 WL 162980, at *2–*4 (N.D.Cal. Mar.11, 1996).

 "We must give substantial deference to administrative tribunals in their interpretations of statutory law" unless Congress clearly intended some other construction of the statute. *Ahmetovic v.*

*INS*, 62 F.3d 48, 51 (2d Cir.1995). As we noted, former section 244(a)(1) itself is ambiguous. The BIA's well-reasoned opinion and the opinions of the other courts that have addressed the issue sufficiently explain why this construction is preferable. In particular, this interpretation is compelling because the regulations that formerly governed applications for suspension of deportation provided that "[a]n application [for suspension of deportation] may be made *only* during the [deportation] hearing." *Cervantes II*, 1997 WL 97701, at *3, *citing* 8 C.F.R. § 242.17(e). Further, as the BIA held, certain formal procedures must be followed in the deportation proceedings before an alien is deemed "deportable." *Matter of Ching*, 12 I. & N. Dec. at 712. Thus, an alien is not "deportable" for section 244(a)(1) purposes in the absence of a deportation proceeding and a finding of deportability. We agree, therefore, that petitioners, who were not in deportation proceedings at the time they filed their application, were not statutorily eligible for suspension of deportation, and their statutory claim must fail.[7]

## CONCLUSION

For the reasons stated herein, we hereby deny the petition.

---

**7.** In an effort to avoid this result, petitioners appear to argue that the INS's acceptance of their $100 payment accompanying their application created some kind of binding contractual responsibility on the part of the INS to adjudicate their application. Petitioners seem to suggest that the government, having accepted the application fee, is estopped from arguing that petitioners are statutorily ineligible for relief. We reject this argument. The INS is required by federal regulations to accept filing fees, including fees for filing requests that are to be adjudicated by an IJ or the BIA. *See* 8 C.F.R. § 103.7(a) (1997). The acceptance of the application fee did not indicate an agreement *by the INS* to consider the application. The INS cannot bind the IJ to consider an application submitted by aliens who are ineligible for the relief sought.