

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-14-2006

# Hernandez v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 04-3832

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

## Recommended Citation

"Hernandez v. Atty Gen USA" (2006). *2006 Decisions.* Paper 1507.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1507

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-3832

DOMINGO ANTONIO HERNANDEZ,
Petitioner

v.

*ALBERTO R. GONZALES, Attorney General of
The United States,
Respondent
*(Pursuant to Rule 43(c) FRAP)

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 04-cv-02186)
District Judge: Honorable Jerome B. Simandle

Argued November 16, 2005
Before: BARRY and AMBRO, <u>Circuit Judges</u>,
and POLLAK[1], <u>District Judge</u>

---

[1]Honorable Louis H. Pollak, United States District Judge
for the Eastern District of Pennsylvania, sitting by designation.

(filed February 14, 2006)

Joseph C. Hohenstein, Esquire (Argued)
Orlow & Orlow, PC
620 Chestnut Street, Suite 656
Philadelphia, PA 19106

      Counsel for Petitioner

Christopher J. Christie
  United States Attorney
Louis J. Bizzarri
  Assistant U.S. Attorney
Matthew J. Skahill, Esquire (Argued)
U.S. Attorney's Office
401 Market Street
P.O. Box 2098, 4th Floor
Camden, NJ   08101

      Counsel for Respondent

---

OPINION OF THE COURT

---

AMBRO, <u>Circuit Judge</u>

Domingo Antonio Hernandez petitions us to rule, *inter alia*, that the repeal of suspension of deportation under the former Immigration and Nationality Act (INA) § 244(a) has an impermissible retroactive effect on aliens like him who

2

pled guilty to a deportable offense and who would have been eligible for suspension of deportation relief but for the repeal. For the reasons provided below, we disagree.

## I. Facts and Procedural Background

Hernandez, a native and citizen of the Dominican Republic, entered the United States as a B-2 "visitor for pleasure" on September 9, 1974, and was authorized to stay in this country only until October 10, 1974. Hernandez, however, remained in the United States beyond that date without authorization from the Immigration and Naturalization Service (INS).[2]

On June 27, 1984, Hernandez pled guilty in New York state court to entering a plea of guilty to attempted criminal possession of a controlled substance (cocaine) in the third degree in violation of New York Penal Law § 220.16. As a result, he was sentenced to five years probation.

On March 12, 1997, Hernandez married a United States citizen who filed a visa petition on his behalf, which was approved on August 14, 1997. In 1998, Hernandez filed an application for adjustment of status (Form I-485) based on his marriage. In his I-485 application, Hernandez did not disclose his prior New York conviction. Hernandez's adjustment of status application was denied and a Notice to Appear was issued on June 21, 1999, starting his removal

_____

[2]Since March 1, 2003, the INS has been merged into the Department of Homeland Security, and is now called the Bureau of Immigration and Customs Enforcement. However, since the case began as an INS matter, we shall continue to refer to the INS.

3

proceedings.  The Notice to Appear charged Hernandez as being removable from the United States pursuant to § 237(a)(1)(B) of the INA, 8 U.S.C. § 1227(a)(1)(B), as an alien who after admission as a non-immigrant under INA § 101(a)(15) has remained in the United States longer than permitted by overstaying his temporary visa.

Hernandez appeared before an Immigration Judge (IJ) on December 13, 1999.  At the hearing, he sought to pursue his application for adjustment of status based on his marriage pursuant to INA § 245 and, alternatively, sought discretionary relief (voiding his removal) pursuant to INA § 240A.  The IJ ruled that Hernandez was ineligible for relief on both grounds because of his 1984 New York conviction.

Hernandez appealed the IJ's decision to the Board of Immigration Appeals (BIA).  It remanded the matter to the IJ to clarify Hernandez's identity and to ascertain specifically whether the New York conviction actually pertained to him.  Moreover, the BIA pointed out that the Government had failed to charge Hernandez with the prior conviction as a basis of removal.

On September 27, 2000, the IJ ruled that the 1984 New York conviction was for Hernandez.  The next day the Government issued Additional Charges of Inadmissibility/Deportability pursuant to INA § 237(a)(2)(B)(i), charging Hernandez with being removable as an alien who has been convicted of a law or regulation of a State, the United States, or a foreign country relating to a controlled substance.

On August 13, 2002, a hearing was held and, on the basis of the 1984 criminal conviction, the IJ determined that Hernandez was ineligible for the relief he sought.  Hernandez

4

again appealed to the BIA. Excepting the IJ's ruling that Hernandez had been convicted of an "aggravated felony," the BIA affirmed the IJ's decision.

Hernandez, who was not in INS custody, sought a writ of *habeas corpus* pursuant to 28 U.S.C. § 2241(c)(3) in the United States District Court for the District of New Jersey. The District Court entertained Hernandez's § 2241 petition but denied him relief on the basis that he failed to satisfy the criteria for entitlement of the relief he sought. He know seeks our review.

## II. Jurisdiction

Under the new judicial review regime imposed by the Real ID Act, Pub. L. No. 109-13, div. B, 119 Stat. 231 (2005), a petition for review is now the sole and exclusive means of judicial review for all orders of removal except those issued pursuant to 8 U.S.C. § 1225(b)(1). *See* 8 U.S.C. § 1252(a)(5). Our jurisdiction was also enlarged, as we now have the authority to consider constitutional claims or questions of law raised in a criminal alien's petition for review. 8 U.S.C. § 1252(a)(2)(D). Moreover, all *habeas corpus* petitions brought by aliens that were pending in the district courts on the date the Real ID Act became effective (May 11, 2005) were converted to petitions for review and transferred to the appropriate courts of appeals. *See* Real ID Act, Pub. L. No. 109-13, div. B, tit. I, § 106(c). We have held that *habeas* petitions that were pending before our Court on the effective date of the Real ID Act—such as the one in this case—were properly converted to petitions for review and retained by us. *Bonhometre v. Gonzales*, 414 F.3d 442, 446 (3d Cir. 2005). Indeed, we are obliged to vacate the District Court's opinion and address the claims raised in

5

Hernadez's *habeas* petition as if they were presented before us in the first instance as a petition for review. *Kamara v. Attorney General of U.S.*, 420 F.3d 202, 210 (3d Cir. 2005).[3]

### III. Merits

Hernandez seeks a ruling on the merits of his application seeking to avoid removal from the United States. In support of his request for relief, he presents two arguments. First, he maintains that he has a due process right to a hearing on the merits of his discretionary relief application. Second, he submits that, because he filed an application for discretionary relief, the INS is statutorily bound to consider it pursuant to former section 244(a) of the INA.

On April 1, 1997, "suspension of deportation" relief, INA § 244(a), 8 U.S.C. § 1254(a), was repealed and replaced by "cancellation of removal" relief, INA § 240A, 8 U.S.C. § 1229b(b), when Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act, Pub. L. No. 104-208, div. C., 110 Stat. 3009 (1996) (IIRIRA). Under the former relief, a non-permanent resident alien against whom

---

[3]Although Hernandez's appeal of the District Court's denial of his *habeas* petition has now been converted into a petition for review, our standard of review remains the same. *Bonhometre*, 414 F.3d 442, 445. "A review for 'constitutional claims or questions of law,' as described in § 106(a)(1)(A)(iii) of the REAL ID Act, 8 U.S.C. § 1252(a)(2)(D), mirrors our previously enunciated standard of review over an alien's habeas petition." *Kamara*, 420 F.3d at 211. Thus, we review Hernandez's constitutional and legal questions *de novo*. *Id*.

6

deportation proceedings on most criminal grounds had begun could apply for suspension of deportation, provided he had been physically present continuously in the United States for ten years immediately following the criminal act constituting the grounds for deportation, had good moral character, and could show that deportation would work a severe hardship on him or on certain United States citizen relatives. *See* INA § 244(a), 8 U.S.C. § 1254(a) (repealed 1996). By contrast, "cancellation of removal" provides for relief from removal where an non-permanent resident alien (1) has been present in the United States continuously for ten years, (2) has had "good moral character" during that period, (3) has no convictions for disqualifying crimes,[4] and (4) has a spouse, parent, or child who is a U.S. citizen or lawful alien and for whom the applicant's removal would lead to "exceptional and extremely unusual hardship." INA § 240A, 8 U.S.C. § 1229b(b)(1).

### A. Due Process

As noted, Hernandez argues that due process demands he be permitted to apply for discretionary relief seeking to avoid removal from the United States. The procedural component of the Fifth Amendment's Due Process Clause protects against the deprivation of life, liberty, or property

---

[4]Any controlled-substance conviction—other than a single offense involving possession for one's own use of 30 grams or less of marijuana—is a disqualifying crime. *See* 8 U.S.C. § 1229b(b)(1)(C) (citing 8 U.S.C. § 1227).

without "due process of law." U.S. Const. amend. V. The necessary first step in evaluating any procedural due process claim is determining whether a constitutionally protected interest has been implicated.

Hernandez is correct in contending that aliens within the United States may not be deprived of liberty or property without due process. *Mathews v. Diaz*, 426 U.S. 67, 77 (1976); *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) ("It is true that aliens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law."). But, like others, aliens must in the first instance possess a liberty or property interest. *See Bd. of Regents v. Roth*, 408 U.S. 564, 569-71 (1972). Aliens who seek only discretionary relief from deportation have no constitutional right to receive that relief. *Cf. Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465 (1981).[5] Rather, the ability of those aliens to remain in the

---

[5]In *Dumschat*, the Supreme Court held that a state inmate does not enjoy a constitutionally protected liberty interest in having his or her sentence commuted, even where the state "consistently" commuted the sentences of inmates in "most" cases. 452 U.S. at 464-65. The Court reasoned that "a constitutional entitlement cannot 'be created--as if by estoppel--merely because a wholly and expressly discretionary state privilege has been granted generously in the past.'" *Id*. at 465 (quoting *Leis v. Flynt*, 439 U.S. 438, 444 n.5 (1979)). Instead, according to the Court, "[i]n terms of the Due Process Clause, a . . . felon's expectation that a lawfully imposed

8

United States is a matter of "permission and tolerance." *Harisiades v. Shaughnessy*, 342 U.S. 580, 586-87 (1952). It as an "act of grace" that, like a presidential pardon, is extended in the Attorney General's "unfettered discretion." *INS v. Yang*, 519 U.S. 26, 30 (1996) (internal quotations omitted). In this context, Hernandez is not deprived of a liberty or property interest.[6] *See Tefel v. Reno*, 180 F.3d 1286, 1301 (11th Cir. 1999).[7]

### B. Retroactivity

Hernandez alternatively argues on appeal that IIRIRA's repeal of suspension of deportation, former INA §

---

[6]sentence will be commuted or that he will be pardoned is no more substantial than an inmate's expectation, for example, that he will not be transferred to another prison; it is simply a unilateral hope." *Id*. (internal footnote omitted). The same analysis applies here.

[6]Of course, to condition eligibility for the discretionary privilege of suspension of deportation on some irrational or invidious characteristic—*e.g.*, gender, or age, or political or religious affiliation—would pose constitutional concerns.

[7]Moreover, Hernandez's attempt to argue that a constitutional injury stems not from being denied suspension of deportation, but from being rendered ineligible to be considered for suspension, fails. This "argument draws a distinction without a constitutional difference. Where no deprivation of a liberty or property interest has occurred, no violation of procedural due process has occurred." *Id*.

244(a), has an impermissible retroactive effect. Relying on *INS v. St. Cyr*, 533 U.S. 289 (2001), and *Ponnapula v. Ashcroft*, 373 F.3d 480 (3d Cir. 2004), Hernandez essentially maintains that the retroactivity analysis applicable to IIRIRA's repeal of the former INA § 212(c) is interchangeable with the analysis to be applied to the repeal of INA § 244(a) and, as a result, he is entitled to § 244(a) suspension of deportation.

The Government, on the other hand, maintains that aliens such as Hernandez, who are in the United States illegally, enjoy no right to continue living here and, in entering a guilty plea to a criminal charge, did not alter their course in the criminal justice system in reliance on the availability of § 244(a) relief. In other words, because Hernandez had no reasonable reliance on the availability of suspension of deportation when he entered his guilty plea and remained in the United States illegally, IIRIRA's repeal of suspension of deportation does not work an impermissible retroactive effect.

Under former § 212(c) of the INA, 8 U.S.C. § 1182(c) (repealed 1996), deportable aliens who had accrued seven years of lawful permanent residence in the United States could request discretionary relief from deportation by arguing that the equities weighed in favor of their remaining in the United States. Even an alien deportable because he had been convicted of an aggravated felony, *see* 8 U.S.C. § 1227(a)(2)(A)(iii), was eligible for this discretionary relief if he served a term of imprisonment less than five years. *See* 8 U.S.C. § 1182(c). There was also a strong likelihood that this relief would be granted; indeed, the Attorney General granted it in over half of all cases in which it was sought. *See St. Cyr*,

10

533 U.S. at 296 & n.5. Moreover, the relief was predictably granted where certain factors were present, including family ties within the United States, residence of long duration in this country, evidence of hardship to the immigrant's family as a result of deportation, and a stable history of employment. *See In re Marin*, 16 I & N Dec. 581, 584-85 (BIA 1978).

Section 304(b) of IIRIRA repealed § 212(c) relief entirely, replacing it (as noted) with a procedure called "cancellation of removal," *see* 8 U.S.C. § 1229b, and providing the revised form of relief is not available to an alien convicted of any aggravated felony. The definition of "aggravated felony" was retroactively expanded to include dozens more offenses, including misdemeanor and low-level felony offenses. *See* 8 U.S.C. § 1101(a)(43). The practical effect of the repeal of § 212(c) relief, in conjunction with several other statutory amendments, is that a far larger number of immigrants are now removable under the new law, while a much smaller number are eligible for any form of relief from removal.

In *INS v. St. Cyr*, 533 U.S. at 326, the Supreme Court held that discretionary relief under former § 212(c) "remains available for aliens . . . whose convictions were obtained through plea agreements and who . . . would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." The Court was asked to determine whether IIRIRA section 304(b) applied retroactively. After concluding that Congress did not provide a sufficiently clear command with respect to the temporal reach of the repeal of former § 212(c) by IIRIRA section 304(b), the Court applied the next step under the familiar principles of *Landgraf v. USI*

11

*Film Products*, 511 U.S. 244 (1994),[8] to determine whether the repeal had an impermissible retroactive effect. *Landgraf* cataloged a history of Supreme Court precedents establishing a "presumption against statutory retroactivity," *id*. at 270, in the absence of a clear command from Congress. A statute will be impermissibly retroactive when it attaches new legal consequences to prior events because its application "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id*. at 280. The question whether a new statute attaches new legal consequences to prior conduct "demands a common sense, functional judgment" that "should be informed and guided by 'familiar considerations of fair notice, reasonable reliance, and settled expectations.'" *Martin v. Hadix*, 527 U.S. 343, 357-58 (1999) (quoting *Landgraf*, 511 U.S. at 270).

In *St. Cyr*, the Court concluded that the retroactive application of IIRIRA section 304(b) would have an

_____

[8]In deciding whether the repeal of INA § 212(c) should be applied retroactively, the Supreme Court applied the two-step analysis it had previously set out in *Landgraf*. *See St. Cyr*, 533 U.S. at 315-26. Under *Landgraf*, the first step to decide whether a statute has a retroactive effect is "to ascertain whether Congress ha[s] directed with the requisite clarity that the law be applied retrospectively." *Id*. at 316 (internal citations omitted). The second step of the *Landgraf* analysis is deciding whether applying the statute retroactively has an impermissible effect. *Id*. at 321.

impermissible retroactive effect on aliens–such as St. Cyr–who had pled guilty prior to the repeal of § 212(c). The Court highlighted the *quid pro quo* of the criminal plea agreement, and reasoned that because aliens like St. Cyr almost certainly relied on the likelihood of receiving discretionary relief in deciding whether to forgo their right to a trial, the elimination of any possibility of § 212(c) relief by IIRIRA had an obvious and significant retroactive effect. *St. Cyr*, 533 U.S. at 322 ("In exchange for some perceived benefit, defendants waive several of their constitutional rights . . . and grant the government numerous tangible benefits.").

We recently extended *St. Cyr*'s impermissible retroactivity analysis to aliens who elect to go to trial.[9]

---

[9]We have taken a more expansive view than several of our sister circuits on this issue. For instance, the Courts of Appeals for the Second and Fourth Circuits have confined *St. Cyr* to the plea-agreement context on the understanding that a *quid pro quo* is required. *See Swaby v. Ashcroft*, 357 F.3d 156, 161-62 (2d Cir. 2004); *Rankine v. Reno*, 319 F.3d 93, 100 (2d Cir. 2003); *Chambers v. Reno*, 307 F.3d 284, 290-91 (4th Cir. 2002). Other courts of appeals have also limited *St. Cyr*'s retroactivity holding to the plea-bargain context without specifically invoking the *quid pro quo* language from it. *See Montenegro v. Ashcroft*, 355 F.3d 1035 (7th Cir. 2004) (*per curiam*); *Dias v. INS*, 311 F.3d 456 (1st Cir. 2002); *Armendariz-Montoya v. Sonchik*, 291 F.3d 1116 (9th Cir. 2002); *Brooks v. Ashcroft*, 283 F.3d 1268 (11th Cir. 2002). A related argument advanced by the Government in these cases is that the immigrant has "rolled the dice" by going to trial and thereby

13

*Ponnapula v. Ashcroft*, 373 at 491 (stating that "the courts that have held that IIRIRA's repeal of § 212(c) relief is not impermissibly retroactive with respect to aliens who went to trial . . . have erected too high a barrier to triggering the presumption against retroactivity"). *Ponnapula* involved an alien who had been indicted by a New York state grand jury, along with several other defendants, for grand larceny in the first degree, N.Y. Penal Law § 155.42, and falsifying business records in the first degree, N.Y. Penal Law § 175.10. 373 F.3d at 483. Subsequent to indictment, Ponnapula and the Manhattan District Attorney's Office engaged in plea negotiations. Ponnapula considered a plea offer and the immigration consequences of pleading guilty versus going to trial. His counsel advised him that, if he was convicted, he would very likely receive the minimum sentence of only one to three years imprisonment, which is less than the five years necessary to disqualify an alien from § 212(c) relief. Accordingly, Ponnapula reasonably believed that, even if he were convicted of a felony after trial, he would still likely be eligible for hardship relief from deportation pursuant to former § 212(c). In reliance on this advice, Ponnapula decided to turn down the misdemeanor offer and proceeded to trial. He was convicted of both counts in the indictment and sentenced to the minimum term of imprisonment – one to three years.

After Ponnapula was allowed out of prison on work release, the INS filed a detainer and warrant for a removal

_____

forfeited any claim to certainty. *See, e.g.*, *Chambers*, 307 F.3d at 291-92.

14

hearing. At the conclusion of a hearing, an immigration judge found Ponnapula removable from the United States. On appeal, the BIA affirmed, holding that *St. Cyr* could not be extended beyond defendants who had pleaded guilty.

On review to our Court, the Government argued that Ponnapula's retroactivity claim failed because *St. Cyr* rests uniquely on the existence of the *quid pro quo* of criminal plea agreements. Indeed, this was the view adopted by the Second Circuit when faced with the same issue in *Rankine v. Reno*, 319 F.3d 93, 100 (2d Cir. 2003). There, it laid out the Supreme Court's modern retroactivity doctrine, *see id*. at 98-99, and then explained that the petitioners' "choice to go to trial puts [them] on different footing [from St. Cyr] in two crucial respects." *Id*. at 99.

> First, none of these petitioners detrimentally changed his position in reliance on continued eligibility for § 212(c) relief. Unlike aliens who entered pleas, the petitioners made no decision to abandon any rights and admit guilt-thereby immediately rendering themselves deportable-in reliance on the availability of the relief offered prior to IIRIRA. The petitioners decided instead to go to trial, a decision that, standing alone, had no impact on their immigration status. Unless and until they were convicted of their underlying crimes, the petitioners could not be deported.
>
> \* \* \* \* \*
>
> Second, the petitioners have pointed to no conduct on their part that reflects an intention to preserve their eligibility for relief under §

15

212(c) by going to trial.  If they had pled guilty, petitioners would have participated in the quid pro quo relationship, in which a greater expectation of relief is provided in exchange for forgoing a trial, that gave rise to the reliance interest emphasized by the Supreme Court in *St. Cyr*.  As the Court made clear, it was that reliance, and the consequent change of immigration status, that produced the impermissible retroactive effect of IIRIRA.  Here, petitioners neither did anything nor surrendered any rights that would give rise to a comparable reliance interest.

*Id*. at 99-100 (citation omitted).

We rejected this rationale for three reasons.  First, we noted that the "Second Circuit's lack of emphasis on the *presumption* against retroactivity is in considerable tension with the Supreme Court's consistent treatment of retroactivity analysis."  *Ponnapula*, 373 F.3d at 490 (emphasis in original).  Indeed, the Second Circuit's approach had the effect of treating *Landgraf* as establishing a presumption in favor of retroactive application.  *Id*.  This would be wrong, as the Supreme Court has held explicitly that a federal court of appeals erred by concluding that *Landgraf* contained a "strong presumption *in favor of* retroactivity."  *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 950 (1997) (stating "[t]he Ninth Circuit simply misread our decision in *Landgraf*, for the only 'presumption' mentioned in that opinion is a general presumption *against* retroactivity") (emphasis in original).

Second, we observed that the *Rankine* passage cited

16

above discussing a detrimental change in position appears to require actual reliance by the party seeking to avoid retroactive application despite the fact that the Supreme Court has never required actual reliance in any case in the *Landgraf* line. *Id*. at 489. We noted that "[t]he likelihood that the party before the court did or did not in fact rely on the prior state of the law is not germane to the question of retroactivity." *Id*. at 493 (concluding that "the Supreme Court has avoided an 'actual reliance' formulation in favor of a 'reasonable reliance' formulation in its retroactivity analysis"). "Rather, courts are to concentrate on the group to whose conduct the statute is addressed – in *Landgraf* it was employers subject to Title VII; in *Hughes Aircraft* it was government contractors; in *Hadix* it was attorneys performing prison reform monitoring services; in *St. Cyr* it was aliens who accepted a plea agreement – with a view to determining whether reliance was reasonable." *Id*. In sum, "[t]he *Landgraf* line . . . establishes that a change in law can be found impermissibly retroactive without establishing that some (or all) members of the group affected by the change in law relied on the prior state of the law." *Id*.

Finally, we expressed our concern with the Second Circuit's objection that "petitioners have pointed to no conduct on their part that reflects an intention to preserve their eligibility for relief under § 212(c)" because that statement suggests that the party seeking to avoid retroactive application bears an evidentiary burden, another requirement nowhere to be found in *Landgraf* or its progeny. *Id*. at 490.

Relying heavily on these three points of contention with the Second Circuit, we concluded that a defendant who goes to trial believing that his opportunity to seek § 212(c)

17

relief is secure is as equally disrupted in his reasonable and settled expectations as is a defendant who accepts a plea believing it to confer such a benefit. *Id*. at 496. Accordingly, Ponnapula was entitled to apply for discretionary withholding of deportation under former § 212(c). *Id*.

The Government contends that *St. Cyr* and *Ponnapula* do not apply to aliens such as Hernandez because, unlike him, the aliens represented in *St. Cyr* and *Ponnapula* had some reasonable reliance in the availability of discretionary relief. That is, because the *St. Cyr* and *Ponnapula* aliens had accrued seven years of lawful permanent residence, they were eligible to seek § 212(c) relief at the time of their plea or jury trial. Moreover, those aliens were aware that a criminal conviction, either via a guilty plea or jury trial, was not an automatic bar to their application. Indeed, aliens who pled guilty or were convicted at trial and sentenced to less than five years imprisonment still could apply for § 212(c) relief. Thus, while the *St. Cyr* and *Ponnapula* aliens altered their courses in the criminal justice system seeking to preserve eligibility for discretionary withholding of deportation, such reasonable reliance is not present for aliens such as Hernandez who pled guilty prior to the repeal of former INA § 244(a).

As previously discussed, under the now-repealed § 244(a), the Attorney General could suspend deportation, and adjust the status to that of an alien lawfully admitted for permanent residence, for a non-permanent resident alien who applied to the AG for suspension of deportation and subsequent to his or her deportable offense had been physically present in the United States for a continuous period of not less than ten years following the commission of

18

the deportable act.  Such an alien must additionally prove that he or she has been a person of good moral character for the entire ten-year period and that he or she is someone whose deportation would result in exceptional and extremely unusual hardship personally or to his or her spouse, parent or child who is a United States citizen or lawful permanent resident.  8 U.S.C. § 1254(a).

Simply stated, under the pre-1996 statutory scheme, when an alien such as Hernandez pled guilty to a deportable offense, he had to remain in the United States for an additional period of ten years under the above-described terms and conditions before he would even be eligible for discretionary relief.  If that alien was served with an Order to Show Cause or a Notice to Appear prior to the completion of the ten-year period, he necessarily would be deportable and ineligible for application of § 244(a) relief.  Therefore, the Government maintains, aliens in the group represented by Hernandez do not have a reasonable reliance on the availability of suspension of deportation when entering a plea of guilty and altering their course in the criminal justice system because, prior to entry of such a plea, the alien would not have been eligible for § 244(a) relief[10] and would be

---

[10]Here, the Government is wrong.  There is no dispute that prior to his 1984 guilty plea, Hernandez's eligibility was governed by "suspension of deportation" relief, former INA § 244(a), not "cancellation of removal relief" as now defined by INA § 240A.  Because Hernandez had no convictions and had been in the United States since 1974, he *was eligible* to apply for relief prior to his 1984 guilty plea (for which he would have

19

ineligible for § 244(a) relief for an additional ten years.

Hernandez counters that the group he represents – people who pled guilty prior to a change in the law and who were eligible for suspension relief prior to that change – had reason to believe that suspension relief was available. Citing *Landgraf*, 511 U.S. at 269, he submits that, whether the repeal of § 244(a) took away his statutorily vested rights, it certainly "attache[d] a new disability" to his past actions, which constitutes a change in the law no different than the change effected on the aliens in *St. Cyr* and *Ponnapula*. For the reasons provided below, we disagree.

As a starting point and similar to the conclusion reached by the Supreme Court in *St. Cyr*, we hold that IIRIRA does not state with sufficient clarity that its repeal of § 244(a) suspension of deportation relief is intended to apply to an alien in Hernandez's position, such that it must be applied even if its operation is retroactive. Like the section of IIRIRA repealing § 212(c) suspension of deportation relief, the statutory provision – stating merely, "strike section 244 (8 U.S.C. § 1254)" – does not "expressly prescribe [its] proper reach." *Landgraf*, 511 U.S. at 280. Because the statute does not clearly state that it is to be applied retroactively, we proceed to the second step of the *Landgraf* analysis.

To prevail there, Hernandez must show that the repeal of suspension of deportation has a retroactive effect on aliens like him who pled guilty to a controlled substance offense

---

needed to show good moral character and severe hardship) under § 244(a).

prior to the change in the law and were eligible for suspension of deportation relief prior to that change. As detailed above, the Court in *St. Cyr* noted that in determining "whether a particular statute acts retroactively, [the Court] should be informed and guided by familiar considerations of fair notice, reasonable reliance, and settled expectations." *Id*. at 321 (internal quotations omitted). Specifically, the Court considered the plea bargain entered by St. Cyr, and asked whether the application of IIRIRA "'attaches a new disability, in respect to transactions or considerations already past.'" *Id*. (quoting *Landgraf*, 511 U.S. at 269).

In applying the second *Landgraf* step, and based on reasoning similar to that presented by the Government here, two circuit courts have denied claims relating to suspension of deportation eligibility that are relevant to our analysis. *See Karageorgious v. Ashcroft*, 374 F.3d 152 (2d Cir. 2004); *Jimenez-Angeles v. Ashcroft*, 291 F.3d 594 (9th Cir. 2002). In *Karageorgious*, father and son aliens presented themselves to the INS by filing an application for suspension of deportation. 374 F.3d at 154. Indeed, the petitioners filed their application on March 28, 1997, in anticipation of the April 1, 1997 effective date repealing suspension of deportation. *Id*. The petitioners were potentially eligible for suspension of deportation but not eligible for cancellation of removal. *Id*. The decision of the father and son to present themselves to immigration authorities was premised on the express desire of preserving their eligibility for suspension of deportation post-IIRIRA. *Id*.

The Second Circuit Court held that the petitioners were not similarly situated to the alien class at issue in *St. Cyr* and, thus, the repeal was not impermissibly retroactive. *Id*. at

156. Citing a case from our Circuit, the Court held that the repeal of suspension of deportation did not apply retroactively because the repeal did not attach any new legal consequences to the petitioners' pre-IIRIRA conduct:

> As the Third Circuit explained in *Uspango v. Ashcroft*, petitioners "gave up no rights by filing the[ir] petition [for suspension]." 289 F.3d 226, 230 (3rd Cir. 2002).[11] Petitioners had no right to remain "living illegally and undetected in the United States." Therefore, they relinquished no rights and acquired no new obligations when they turned themselves in to the INS. In effect, petitioners are no different from aliens who chose not to apply for suspension of deportation prior to the date on which IIRIRA became effective.

*Id*. (citations and quotation omitted).

Much like the petitioners in *Karageorgious*, the petitioner in *Jimenez-Angeles* brought herself to the attention of the INS in March 1997 in an attempt to begin a process that would enable her to apply for suspension of deportation. 291 F.3d at 597. Jimenez-Angeles argued that she was like the alien in *St. Cyr*, who pled guilty prior to IIRIRA's effective date, and thus had a reliance interest in the availability of § 212(c) relief. *Id*. at 600. The Ninth Circuit Court concluded that Jimenez-Angeles' circumstances

_____

[11]*Uspango* dealt with when to begin counting the requisite physical presence requirement, which is not at issue in this case.

22

differed significantly from those in *St. Cyr*, as

> [t]he factors that militated in favor of St. Cyr–in particular, his 'settled expectations' based on 'transactions or considerations already past'–are not present in Jimenez-Angeles' case. . . .When St. Cyr entered into his plea bargain, he gave up valuable legal rights, including his right to trial by jury. By contrast, when Jimenez- Angeles revealed herself to the INS, she gave up only her ability to continue living illegally and undetected in the United States.

*Id*. at 602.

Because our colleagues in the Second and Ninth Circuits engage in a retroactivity analysis different from the one we apply, *Karageorgious* and *Jimenez-Angeles* are distinguishable. As explained in *Ponnapula*, under our retroactivity standards, a presumption against retroactivity is "easily triggered" (though not automatic), *see* 373 F.3d at 490-91, and we do not look to the actual reliance of the petitioner bringing the claim, *id*. at 493. Indeed, Hernandez relies on *Ponnapula* for the proposition that, when he revealed his unlawful status by filing an application for adjustment of status, he had a settled expectation that, if that application was denied, he would be able to request suspension of deportation. *Ponnapula* notwithstanding, this argument is unpersuasive for several reasons.

First, we take issue with Hernandez's claim that he voluntarily revealed his unlawful status because the record makes clear that Hernandez failed to disclose his 1984 New York conviction in his adjustment of status application. Moreover, he was eligible to request suspension of

deportation on June 27, 1994 – nearly three years before the effective repeal of § 244(a) – but he did not reveal himself to authorities to make such a request until well after the repeal of that section. By contrast, it was undisputed that the petitioners in *Karageorgious* and *Jimenez-Angeles* voluntarily revealed their illegal status to the INS, and in fact did so prior to the repeal of either § 244(a) or § 212(c) of the INA. Notably, the *Karageorgious* and *Jimenez-Angeles* petitioners' claims still failed because they relinquished no rights and acquired no new obligations by turning themselves in to the INS.

In essence, then, all that Hernandez can claim a retroactive effect from is his voluntary communication with the INS to apply for a benefit – adjustment of status based on his marriage to a United States citizen. The unstated crux of Hernandez's claim is that he would not have applied for an INS benefit if he had known that he was ineligible for § 244(a) relief. We refuse to rule that the repeal of § 244(a) attaches a new disability to Hernandez's decision to concede

24

voluntarily his alienage post-IIRIRA because such a determination implicitly presumes that Hernandez had some right to continue to conceal his illegal status.  As explained above, Hernandez had every opportunity to reveal himself to the INS while the pre-IIRIRA rules were still in effect and, at that juncture, could have reasonably relied on then-extant § 244(a) relief.  Because Hernandez's application for adjustment of status amounts to a decision to give up something to which he had no right in the first place—his ability to continue living illegally in the United States—we conclude that Hernandez's 1999 concession of his alienage does not cause Congress' repeal of suspension of deportation as applied to him to be impermissibly retroactive.

*   *   *   *   *

For the reasons detailed above, due process does not demand Hernandez be permitted to apply for suspension of deportation.  Moreover, the 1996 repeal of suspension of deportation under section 244(a) of the INA does not have an impermissibly retroactive effect on aliens who both pled guilty to a deportable offense prior to the repeal of that section and were eligible for relief prior to its repeal.  In this context, Hernandez's petition for review is denied.